**Martha MARRERO–RIVERA, Plaintiff,**

v.

**The DEPARTMENT OF JUSTICE OF the COMMONWEALTH OF PUERTO RICO, Pedro Geronimo Goyco–Amador, and Iris Dolores Melendez–Vega, Individually and in Their Official Capacities, Defendants.**

**Civ. No. 92–1172 (JAF).**

United States District Court, Puerto Rico.

July 23, 1992.

Francisco M. Dolz-Sánchez, San Juan, Puerto Rico, for plaintiff.

Kenneth Colón, Federal Litigation Division, Dept. of Justice, Com. of Puerto Rico, Jorge E. Perez-Diaz, Secretary of Justice, San Juan, Puerto Rico, for Dept. of Justice.

José G. Fagot-Díaz, Ramirez & Ramirez, San Juan, Puerto Rico, for remaining defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff has filed for relief under Title VII, 42 U.S.C. §§ 2000e—2000e-17, and under 42 U.S.C. § 1983, for violation of rights guaranteed by the United States Constitution. The plaintiff has also filed pendent state claims under 29 L.P.R.A. § 146. Defendants have moved to dismiss under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. We dismiss plaintiff's claims under Title VII and under section 1983 without prejudice for failure to produce a proper right-to-sue letter.

## I.

### Facts

Plaintiff began working for the Department of Justice as a secretary on February 1, 1986, and was assigned to the Centro Metropolitano de Investigaciones y Denuncias ("CMID") on November 16, 1987. She worked at the CMID without incident until September 1990, when Prosecutor Iris Meléndez-Vega was appointed as the director of the CMID. Shortly after her arrival, plaintiff alleges that Meléndez-Vega began to subject her to unwanted sexual advances. A pattern developed of unwanted comments about the plaintiff's physical appearance, her body and clothing; unwanted sexual insinuations and gestures; unwelcome physical advances, such as caressing the plaintiff's hair, touching her buttocks or otherwise imposing physical contact upon her. Plaintiff claims that when she explicitly rejected these advances, Meléndez-Vega threatened her with retaliation. From the time of her rejection onward, plaintiff states that Meléndez-Vega made her life at the CMID difficult: Meléndez-Vega made derogatory comments about plaintiff behind her back and let her know, directly and indirectly, that she was no longer welcome at the CMID.

On June 7, 1991, plaintiff alleges that Pedro Goyco-Amador, Meléndez-Vega's supervisor, called plaintiff into his office. Goyco-Amador allegedly told Marrero-Rivera that he had heard she was unhappy at the CMID. Plaintiff states that she saw a note on Goyco-Amador's desk from another CMID employee which she knew referred to incidents of sexual harassment at the CMID. From this meeting, plaintiff concluded that Goyco-Amador knew she was being harassed but chose not to comment on the subject. At their next meeting on July 19, 1991, plaintiff says that Goyco-Amador informed her that codefendant Meléndez-Vega wanted her out of the CMID because plaintiff was causing her personal problems. At this point, plaintiff alleges she explicitly informed Goyco-Amador that she had been sexually harassed by Meléndez-Vega. Upon hearing her complaints, Goyco-Amador allegedly told her she could not continue working at the CMID and must transfer. He also informed plaintiff that in view of her complaint against Meléndez-Vega, he could not recommend her favorably for an employment reclassification for which she had applied. Goyco-Amador allegedly informed plaintiff to request a transfer without putting her reasons for the transfer in writing. On August 5, 1991, plaintiff requested a transfer without stating the reasons. She was transferred to the San Juan District Office where she was to work as a reporter. Upon transfer, she discovered that in this new position she was subject to a probationary period of eight weeks and was required to take a qualifying test. Plaintiff asserts that this transfer amounted to a

demotion. On August 17, 1991, plaintiff once again met with Goyco–Amador and asked to be moved back to her old position. She alleges Goyco–Amador mocked her and refused help.

On August 28, 1991, plaintiff went to the Anti–Discrimination Unit ("ADU") of the Puerto Rico Department of Labor, a deferral agency for the Equal Employment Opportunity Commission ("EEOC") under Title VII, 42 U.S.C. § 2000e–5(c). *See* 29 C.F.R. § 1601.74. She alleges having brought charges with the ADU against the Department of Justice, Goyco–Amador, and Meléndez–Vega. She was interviewed by an employee of the ADU, Maria Franco Soto, for two hours. After filing her complaint, the situation at the Department of Justice apparently took a turn for the worse. On September 27, 1991, plaintiff found out that her reclassification had been approved, but because she was no longer in her original position, it could not take effect. On October 1, 1991, plaintiff put the reasons for her request for a transfer in writing to Goyco–Amador and sent a copy to the ADU. On October 17, 1991, Goyco–Amador allegedly wrote back threatening to press criminal charges and directing a copy to the ADU as well. The ADU did not acknowledge receipt of the documents sent by the plaintiff until November 4, 1991, at which point they invited her to file a complaint under Puerto Rico law. Plaintiff then applied for benefits from the State Insurance Fund, which were denied on November 22, 1991. On January 3, 1992, she supplemented her charge with a sworn statement and a copy of the State Insurance Fund determination.[1]

Plaintiff filed her complaint in this court on February 10, 1992, not quite 180 days after the date she claims to have made her initial filing of charges with the ADU and without having requested a right-to-sue letter from the agency. After defendants filed a motion to dismiss on April 6, 1992, arguing that plaintiff's complaint should be dismissed for lack of a right-to-sue letter,

plaintiff requested a right-to-sue letter from the ADU. On April 15, 1992, plaintiff received a letter in which "permission to sue us [sic] authorized and granted." In this letter, the ADU stated they were closing their case file and would notify the EEOC of plaintiff's request for a right-to-sue letter. Plaintiff procured no letter from the EEOC or any other source.

## II.

### *Title VII*

Title VII of the Civil Rights Act prohibits discrimination on the basis of sex. 42 U.S.C. § 2000e–2. Although the statute does not specifically address the issue of sexual harassment, it has been interpreted to prohibit such behavior. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Williams v. Saxbe*, 413 F.Supp. 654 (D.D.C.1976), *rev'd. on other grounds*, 587 F.2d 1240 (D.C.Cir.1978). Since 1980, the regulations governing Title VII have explicitly included sexual harassment in the sphere of behavior prohibited by the statute. 29 C.F.R. § 1604.11 (1980). Although the statute originally recognized and sought to combat the realities of a work force where women were generally employees of men—creating a confluence in the work situation of the power imbalance historically present between men and women, and the power imbalance between employer and employee—the statute has also been held to apply to same gender sexual harassment. *Joyner v. AAA Cooper Transportation*, 597 F.Supp. 537, 541 (M.D.Ala.1983), *aff'd.*, 749 F.2d 732 (11th Cir.1984); *see also Wright v. Methodist Youth Services, Inc.*, 511 F.Supp. 307 (N.D.Ill.1981).

To bring a court action under Title VII in federal court the complainant must first satisfy all the administrative procedures required by the statute. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).

---

1. Although not included in her complaint, plaintiff states that she filed a written charge under oath on this date in a later motion. In that motion she cites to two case numbers: ADU #92001C and EEOC #16H920106. This is the only explicit indication that plaintiff ever filed with the EEOC.

Most important among these requirements are the timely filing of a charge with the EEOC and the request of a right-to-sue letter. *See* A. Conte, *Sexual Harassment in the Workplace: Law and Practice* at 131–32 (1990).

### A. Right–to–Sue Letter

■■■ Defendants argue that plaintiff's complaint should be dismissed because she filed in federal court before obtaining a right-to-sue letter. After filing a charge with the EEOC or the appropriate deferral agency, if the agency has taken no action within 180 days, the complainant may request a right-to-sue letter regardless of the status of the administrative proceedings. 42 U.S.C. § 2000e–5(f)(1). While a plaintiff must have a right-to-sue letter, in order to bring suit in federal court under Title VII the right-to-sue letter is not a jurisdictional requirement. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Unlike the situation where a jurisdictional requirement is involved, courts have held that the issuance of a right-to-sue letter by the EEOC before a plaintiff brings suit in federal court may be subject to equitable adjustments. *Gooding v. Warner–Lambert Co.*, 744 F.2d 354 (3rd Cir.1984); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346 (9th Cir.1984); *Williams v. Washington Metropolitan Area Transit Authority*, 721 F.2d 1412 (D.C.Cir.1983); *Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518 (11th Cir.1983); *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir.1982); *Pinkard v. Pullman–Standard, Div. of Pullman, Inc.*, 678 F.2d 1211 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Black v. Brown University*, 555 F.Supp. 880 (D.R.I. 1983). Requiring the complainant to obtain a right-to-sue letter serves three very important policy considerations: An emphasis on private dispute resolution, an attempt to prevent concurrent court and agency action, and the regulation of the statute of limitations for private actions. *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d at 1094. Equitable considerations dictate that while plaintiff is required to request a right-to-sue letter, failure to do so should not damage the plaintiff's rights under the statute. Where, as in this case, a plaintiff files in federal court before requesting a right-to-sue letter from the EEOC, courts have held that this defect may be cured by the plaintiff's receipt of the letter during the pendency of the suit. *Neal v. IAM Local Lodge 2386*, 722 F.2d 247 (5th Cir. 1984); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d at 1351; *Williams v. Washington Metropolitan Area Transit Authority*, 721 F.2d at 1418. Therefore, when faced with a motion to dismiss for failure to obtain such a letter, we look at the file for evidence that plaintiff has cured the defect subsequent to the filing of the court action.

■■■ The defendants claim that plaintiff has not yet received the necessary right-to-sue letter. They argue that when Title VII was extended to include state and local governments by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e(a), the accompanying regulations specified that the right-to-sue letter for a suit against a government agency must come from the Attorney General. 29 C.F.R. § 1601.28(d) (1992). This is a correct interpretation of the law and regulations, except where the charge has been dismissed by the agency, in which case the EEOC may issue the right-to-sue letter.[2] For all other defendants, the complainant must obtain the right-to-sue letter from the EEOC. 29 C.F.R. § 1601.28(a). Plaintiff received authorization to sue from the ADU on April 15, 1992. Under the law and regulations, the ADU letter does not fulfill the requirement for a right-to-sue letter for suit under Title VII against either the Department of Justice as a government agency or the other defendants. The ADU let-

---

**2.** Section 1601.28(d) states, in its pertinent part: In all cases where the respondent is a government, governmental agency, or a political subdivision (sic), the Commission will issue the notice of right to sue *when there has been a* *dismissal of a charge....* In all other cases ... the Attorney General will issue the notice of right to sue.
29 C.F.R. § 1601.28(d) (emphasis added).

ter allows plaintiff to file a local law cause of action, but for a suit against the Department of Justice under Title VII, plaintiff must either assure the court that the action has been dismissed and produce a right-to-sue letter from the EEOC, or produce a right-to-sue letter from the Attorney General. For a suit against the other defendants, plaintiff must produce a right-to-sue letter from the EEOC. Nowhere in the regulations is it suggested that the deferral agency may issue the right-to-sue letter for anything other than an authorization to sue under local law.

Even accepting all allegations as stated by the plaintiff, we must dismiss plaintiff's Title VII claim without prejudice for failure to meet the condition precedent of presenting a right-to-sue letter which conforms to the applicable regulations.[3] The bare fact is that the Title VII suit has been prematurely filed. The plaintiff did not procure the necessary permission to file her Title VII claim. The dismissal, of course, is without prejudice.

### III.

### *Section 1983*

The Department of Justice has moved that the section 1983 action against it be dismissed as prohibited by the eleventh amendment. In addition, the defendants claim that the 1991 amendments to Title VII, Civil Rights Act of 1991, P.L. No. 102–166, 105 Stat. 1071 (1992), preempt a claim under section 1983. We will address the preemption issue first. To do this, we must decide whether this case involves the retroactive application of the statute and whether such a retroactive application is permissible.

#### A. Retroactivity

█ The Civil Rights Act of 1991 became effective on November 21, 1991. Plaintiff filed her motion on February 10, 1992. While the suit was filed after the passage of the Civil Rights Act of 1991, the conduct upon which the suit is based took place before the Act was passed in the summer of 1991. The First Circuit applies the term "retroactive" to situations where "the problem is whether the act, fully effective as of the time the case is heard and decided, should govern *conduct* occurring before the stated effective date." *Aledo–Garcia v. Puerto Rico Nat. Guard Fund, Inc.,* 887 F.2d 354, 355 (1st Cir.1989). However, since we find that regardless of whether the application is retroactive or not, the result would be the same, we do not need to define the parameters of what is retroactive in the "traditional sense or perhaps, more accurately, nonsense." *Id.* at 355. Either the application is not retroactive, in which case the statute should be applied as enacted, or the application is retroactive but not impermissibly so.

The retroactive application of the Civil Rights Act of 1991 would not be impermissible. There are two Supreme Court cases which appear to set out diametrically opposed presumptions on the issue of retroactivity. In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court found that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. However, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court adopted a presumption against retroactivity without attempting to reconcile that rule with the rule articulated in *Bradley.* The First Circuit is one of the few circuits which prefers *Bradley* to *Bowen.* In a case that post-dates *Bowen,* the First Circuit applied the rule with regard to retroactive application of statutes articulated in *Bradley. Aledo–Garcia v. Puerto Rico Nat. Guard Fund, Inc.,* 887 F.2d at 355. The First Circuit has also recognized a second presumption that

---

**3.** The court should only grant a Fed.R.Civ.P. 12(b)(6) motion if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Gonzalez–Bernal v. U.S.,* 907 F.2d 246, 248 (1st Cir.1990). The court must accept as true all material allegations and construe them in favor of the complaining party. *International Paper Co. v. Jay,* 928 F.2d 480, 482 (1st Cir.1991).

"statutes affecting substantive rights and liabilities ... have only prospective effect." *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1984). The First Circuit has used this case to reconcile the two precedents in *Bradley* and *Bowen,* by finding "that the touchstone for deciding the question of retroactivity is whether retroactive application of a newly announced principle would alter substantive rules of conduct and disappoint private expectations." *C.E.K. Indus. Mechanical Contractors v. N.L.R.B.,* 921 F.2d 350, 358 n. 7 (1st Cir.1990). Most of the courts in jurisdictions which adopt the *Bradley* presumption have applied the Civil Rights Act of 1991 retroactively.[4] Several of these courts have found that where the amendments in the Civil Rights Act of 1991 do not alter substantive rights and they may be applied retroactively.[5] The problem with this approach is it requires the classification of all portions of the statute as either procedural or substantive.

Only three circuits have ruled on this issue to date. Two circuits held that under *Bowen,* the Civil Rights Act of 1991 may only be applied prospectively because it involved substantive rights. *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. Cincinnati,* 959 F.2d 594 (6th Cir.1992). The Seventh Circuit, in

which most of the lower courts had used *Bradley* to find that the Civil Rights Act of 1991 should be applied retroactively,[6] found that *Bowen* should be the rule on appeal. *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992). However, although it did not reach the issue, it implied that cases in progress might be distinguishable and, in such cases, procedural and remedial provisions might be applied retroactively.[7] In this case, plaintiff filed after the passage of the statute. Since we find that the provision to be applied here, section 102 of the Civil Rights Act of 1991, 105 Stat. 1071, 1072 (1992), is procedural and remedial, we apply the presumption under *Bradley.* As in *Demars,* we find that no argument can be made that the provision either interferes with antecedent rights or changes a standard by which human action is regulated. *Demars v. First Service Bank for Sav.,* 907 F.2d 1237, 1240 (1st Cir.1990) (quoting *Union Pacific R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102–03, 58 L.Ed. 179 (1913)). The availability of damages and a jury trial to plaintiff would not have changed the conduct of the defendants.

■■■ Applying the rule in *Bradley,* there can be no manifest injustice to the parties in this case where the same reme-

---

**4.** Other courts following *Bradley* find that the Civil Rights Act of 1991 should be applied retroactively. *Andrade v. Crawford & Co.,* 786 F.Supp. 1302 (N.D.Ohio 1992); *Sample v. Keystone Carbon Co.,* 786 F.Supp. 527 (W.D.Pa. 1992); *Sanders v. Culinary Workers Union Local No. 226,* 783 F.Supp. 531 (D.Nev.1992); *Joyner v. Monier Roof Tile, Inc.,* 784 F.Supp. 872 (S.D.Fla. 1992); *Long v. Carr,* 784 F.Supp. 887 (N.D.Ga. 1992); *Goldsmith v. Atmore,* 782 F.Supp. 106 (S.D.Ala.1992); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991).

**5.** In the Ninth Circuit, the courts followed that circuit's attempt to reconcile *Bowen* and *Bradley,* which presumes retroactivity if the statute "is addressed to remedies and procedures and does not otherwise alter substantive rights." *Lee v. Sullivan,* 787 F.Supp. 921, 931 (N.D.Cal. 1992); *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992); *United States v. Department of Mental Health,* 785 F.Supp. 846 (E.D.Cal.1992). In the Seventh Circuit, the courts followed *Bradley* only to be reversed by the circuit, which found that while *Bowen* gov-

erns the appeal, if the statute concerns "procedural or damage provisions," then they may be applied retroactively. *See below, Graham v. Bodine Electric Co.,* 782 F.Supp. 74 (N.D.Ill. 1992); *Saltarikos v. Charter Mfg. Co.,* 782 F.Supp. 420 (E.D.Wis.1992); *Poston v. Reliable Drug Stores, Inc.,* 783 F.Supp. 1166 (S.D.Ind. 1992); *Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill.1991).

**6.** *See* note 5.

**7.** The Seventh Circuit stated:

Nevertheless, considering that Bowen is the general rule of construction, there is a flip side to the argument that courts should apply the procedural and damage provisions in effect at the beginning of proceedings. In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating procedure and damages and those provisions that affect substantive rights and obligations.

*Mozee,* 963 F.2d 929, 940.

dies would have been available to plaintiff through a section 1983 suit under the old law. To decide if there is manifest injustice, the court must look at three factors: (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in the law upon those rights. *Aledo–Garcia v. Puerto Rico National Guard Fund, Inc.,* 887 F.2d at 355–56. The parties involved are a government agency and its employees and the secretary of one of those employees. The First Circuit has found that "if the party against whom the statute is to be applied is a public party, then the 'struggle' against the so-called retroactive application is not as hard." *Id.* The Department of Justice is a public agency; however, its employees are private individuals to the extent that they are responsible for damages individually. The rights affected are substantial: Never before have punitive and compensatory damages been available to plaintiffs under Title VII. However, the same remedies which will be available under Title VII were previously available to the plaintiff under a section 1983 cause of action. In the sexual harassment context, the First Circuit has found that the parallels between the language of the fourteenth amendment and that of Title VII make the two actions the same as far as matters of proof are concerned. *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896 (1st Cir.1988). So, in practical terms, the substantive rights and liabilities of the defendants have not been affected in the least. Consequently, in this situation, where the action was brought after the effective date of the statute but the conduct involved occurred before the effective date, we find the quasi-retroactive application of the Civil Rights Act of 1991 appropriate.

### B. Title VII Preemption of Section 1983

█ Now that we have determined that the Civil Rights Act of 1991 applies to the case at hand, we must turn to the issue raised by the defendant, namely whether the newly amended Title VII cause of action makes the availability of a cause of action under section 1983 superfluous. The First Circuit has accepted the predominant view that Title VII does not preempt an action under section 1983. *Id.* However, we feel this position should be reevaluated in light of the Civil Rights Act of 1991. The Supreme Court has already observed "that Congress' decision to permit jury trials and compensatory and punitive damages under the amended act signals a marked change in its conception of the injury redressable by Title VII." *U.S. v. Burke,* —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).

In determining whether to preempt actions under section 1983 by enacting the Civil Rights Act of 1991, we turn to the jurisprudence of the Supreme Court. We note that there are two potentially conflicting lines of thought which might influence our outcome of this issue. On the one hand, the Court has repeatedly found that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Asso.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).[8] The reasoning seems to rest upon the question of whether the statutory plan is "sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a section 1983 cause of action." *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). The Court applied this reasoning to Title VII specifically in two cases. *Great American Federal Sav. & Loan Asso. v. Novotny,*

---

8. The Court has even extended this reasoning to the point that Congress' failure to provide for money damages against officials responsible for unconstitutional conduct within the elaborate administrative structure of the Social Security Act is an indication that Congress had no intent to provide such relief which should therefore not be provided through a *Bivens* action. *Schweiker v. Chilicky,* 487 U.S. 412, 424, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988).

442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979); *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). On the other hand, the Supreme Court has been reluctant to limit actions under 42 U.S.C. §§ 1981 and 1983 because these actions have long protected citizens against violations of their civil rights. Title VII itself says nothing with regard to section 1983 actions, however, "[s]pecific references were made to §§ 1981 and 1983" in the legislative history of Title VII. *Great American Federal Sav. & Loan Asso. v. Novotny*, 442 U.S. at 377, 99 S.Ct. at 2351. It appears to be from these references that the Court inferred that a section 1983 action is not preempted by Title VII. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Supreme Court has never reached the question of whether section 1983 is preempted by Title VII.

Following the reasoning of *Novotny* and *Brown*, and given the remedial parity of Title VII and section 1981 after the Civil Rights Act of 1991, we find that the amended statutory structure indicates an intent on the part of Congress to make Title VII whole to the exclusion of section 1983. Title VII now offers a plaintiff all of the remedial advantages they once gained under section 1983: access to compensatory and punitive damages, and a jury trial.[9] The Civil Rights Act of 1991 has erased the differences which made Title VII and section 1983 distinct causes of action. What remains to distinguish them now is the abstract notion that section 1983 protects separate constitutional rights and also the administrative apparatus of Title VII. We feel that the administrative apparatus of Title VII, which was intended by Congress to protect both the employee and the employer by resolving actions without the costly and time consuming intervention of the courts, should be adhered to. *See Torres v. Wisconsin Dept. of Health & Social Services*, 592 F.Supp. 922 (E.D.Wis. 1984). We find it counter-intuitive that Congress would endow Title VII with all the remedies previously available only under section 1983 while still intending to preserve a cause of action that allows a plaintiff to bypass Title VII completely. The stated purpose of the Civil Rights Act of 1991 was to make Title VII a stronger, more complete remedy. Why allow a section 1983 cause of action to undermine the administrative structure and process of Title VII as amended? The language of the statute says nothing about section 1983 actions.[10] The only direction given to the courts concerning the construction of the

---

**9.** Civil Rights Act of 1991, P.L. No. 102–166 § 102, 105 Stat. 1071, 1073 (1992), allows punitive damages against any respondent, except "a government, government agency or political subdivision." This puts a plaintiff bringing an action under Title VII in the same position as a plaintiff bringing an action under section 1983. To recover punitive damages under section 1983, a plaintiff must show intent to discriminate. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Only persons, as opposed to political entities, can form the intent necessary to be liable for punitive damages. Also, states and state employees in their official capacity are protected from suit under section 1983 by the eleventh amendment, and a plaintiff has no right to recover punitive damages against a municipality. *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The two actions are now remedially equal.

**10.** As originally proposed, section 209 of H.R. 1 suggested that the Civil Rights Act of 1991 should not affect other existing civil rights statutes. It stated:

> Long-standing rules of statutory construction are codified to provide that civil rights statutes should be interpreted broadly to effectuate their remedial purposes. Courts have to select the construction which most effectively advances the underlying congressional purposes of such laws, such as providing equal opportunity and effective remedies for victims of discrimination.
>
> Also codified is the well-established rule that in construing one federal law protecting civil rights, the courts are not to infer that other federal laws protecting civil rights have implicitly repealed or amended such laws. That same principle is applied to the amendments made by this legislation.
>
> 1991 U.S.C.C.A.N. 549, 651. This language was not adopted in the law that was eventually passed. We find that Title VII, as amended in 1991, now affords a legislated, precise and complete cause of action of the type originally recognized by judicial decisions under section 1983. Now that Congress has acted, there is no need for judicial duplication.

law is that "[n]othing in this section shall be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes (42 U.S.C.1981)." We do not see our interpretation of the amendments to Title VII as narrowing accepted rules of law. Among the accepted rules of law, as seen above, is that where remedial devices are sufficiently comprehensive they preclude the remedy of suits under section 1983. Title VII is now remedially indistinguishable from a section 1983 approach to a case like the present one, leading to the anomalous situation that the section 1983 action which has no administrative requirements, can be used by a plaintiff to bypass the carefully constructed administrative structure of Title VII. This cannot have been the intent of Congress.

## IV.

### Conclusion

In the context of a sexual harassment case like the present one, Title VII, as amended by the Civil Rights Act of 1991, establishes the administrative and judicial procedure to be used to redress an appropriate injury.

We DISMISS plaintiff's claims under Title VII without prejudice for lack of the proper right-to-sue letter. We DISMISS plaintiff's claim under section 1983. Such claim is now preempted by her eventual Title VII claim after completing the administrative process.

IT IS SO ORDERED.