Vilma Antonmarchi **BONILLA, Plaintiff,**

v.

**LIQUILUX GAS CORP.; Gas Del Pueblo, Inc.; Puerto Rico Fuels, Inc.; Julio Vega, and his conjugal partnership, Defendants.**

**Civ. No. 92–1978 (JAF).**

United States District Court,
D. Puerto Rico.

Feb. 9, 1993.

Enrique Mendoza–Mendoza, San Juan, PR, for plaintiff.

Manuel A. Quilichini, San Juan, PR, for Julio Vega.

Luis A. Núñez–Salgado, Cancio, Nadal & Rivera, San Juan, PR, for remaining defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff is bringing an action under Title VII, 42 U.S.C. § 2000e et seq. She is also bringing her action under various local civil rights statutes: Law No. 100, Law No. 69, Law No. 17, and Law No. 80, 29 L.P.R.A. §§ 146, 1321–1341, 155 & 185a, respectively. Defendants are plaintiff's supervisor, Julio Vega, his conjugal partnership, and his employers: Liquilux Gas Corp. ("Liquilux"), Gas del Pueblo, Inc. ("Gas del Pueblo"), and Puerto Rico Fuels, Inc. ("Puerto Rico Fuels"). Defendants have moved to dismiss a portion of plaintiff's action under Title VII because they argue the Civil Rights Act of 1991 does not apply retroactively. They move to dismiss the pendent state claims to avoid jury confusion. Puerto Rico Fuels argues that it was improperly named as an employer party defendant. We *deny* defendants' motion to dismiss all remedies made available by the Civil Rights Act of 1991. We *deny* the motion to dismiss the pendent state claims. In addition, we *deny* the motion to dismiss filed by defendant Puerto Rico Fuels.

### Facts

The plaintiff, Vilma Antonmarchi Bonilla, had worked as a secretary for Casa Muñoz, Inc. ("Casa Muñoz"), in Yauco, since 1968. She alleges that in 1988, Casa Muñoz was purchased by Liquilux, Gas del Pueblo, and Puerto Rico Fuels. Whether these three companies bought Casa Muñoz together or exist in some hierarchical relationship to each other is not clear from the complaint. In May of 1991, Julio Vega began to work as plaintiff's supervisor. Plaintiff alleges

that he began to subject her to unwelcome sexual advances which eventually led to a deterioration of her emotional and physical health. She reported these incidents to her employers; however, they did nothing to put an end to the situation. Her illness and the failure of her employers to respond to the problem caused her to resign from her position in October of 1991. Early in 1992, an employer's committee found that Mr. Vega's actions did not constitute sexual harassment, but offered to reinstate plaintiff in the Ponce office. Plaintiff found this alternative unacceptable because she lives in Yauco and the commute to Ponce would have been too burdensome. She felt that Vega should have been the one moved. Considering the response of her employers inadequate, plaintiff remained absent from work. She took the appropriate administrative steps for bringing a claim under Title VII and eventually filed a suit in federal district court.

### Discussion

Defendants have made three motions in response to plaintiff's complaint. Puerto Rico Fuels has moved to dismiss because it has no record that it ever employed either the plaintiff or Julio Vega. All of the defendants move to dismiss the claims brought under the amendments to Title VII passed as part of the Civil Rights Act of 1991. Pub.L. 102–166, 105 Stat. 1071 (1991). They also all move to have the pendent state claims dismissed as incompatible with the federal claims.

### I.

### Puerto Rico Fuels as a Defendant

■ Puerto Rico Fuels presents an affidavit from Mrs. Edna Rodríguez, an administrative assistant at Puerto Rico Fuels. Mrs. Rodríguez is in charge of personnel records. The affidavit states that no personnel record exists for either the plaintiff or Julio Vega during the period of time covered by the complaint. Plaintiff is bringing suit against her employer. An "employer" is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employ-

ees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Plaintiff has stated that both she and Mr. Vega worked for Puerto Rico Fuels at the time when she was allegedly harassed by Mr. Vega. An "employee" is defined in Title VII as "an individual employed by an employer." 42 U.S.C. § 2000e(f). From plaintiff's allegations, we assume that Puerto Rico Fuels fits the definition of employer and that plaintiff was employed by Puerto Rico Fuels. In the context of a motion to dismiss, which is governed by Fed.R.Civ.P. 12(b)(6), the court must "accept as true all material allegations of the ... complaint, and construe them in favor of the complaining party." *International Paper Company v. Jay*, 928 F.2d 480, 482 (1st Cir.1991). Therefore, absent a showing that Puerto Rico Fuels could never have been plaintiff's employer, we cannot dismiss the action against Puerto Rico Fuels. It must appear "to a certainty that the plaintiff would be unable to recover under any set of facts." *González–Bernal v. United States*, 907 F.2d 246, 248 (1st Cir.1990).

■ By presenting us with evidence of the absence of any personnel records for the individuals involved in this suit, Puerto Rico Fuels has shown that it is not the direct employer of either the plaintiff or Julio Vega. However, there are ways to employ an individual without being their direct employer. The First Circuit has acknowledged the adoption of both the concept of "single employer" and that of "joint employer" into the Title VII context. *Rivas v. Federación de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814, 820 n. 15 (1st Cir.1991). Two employers can be treated as a single entity if they stand in some sort of relationship: "[t]he controlling criteria ... are interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio & Television Broadcast Technicians v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). Two employers may be considered "joint employers," if they share such things as " 'the supervision

of the employee's day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions.'" *Rivas,* 929 F.2d at 820 (quoting *G. Heileman Brewing Co., Inc. v. NLRB,* 879 F.2d 1526, 1531 (7th Cir.1989)). In the case of the single employer doctrine, the two entities are essentially the same entity. In the case of the joint employer doctrine, the two share control of the employee to such an extent that they both function as an employer, even though they are operationally distinct. In either case, a company can be legally considered the employer of an individual without having a record of having employed that individual.

Because we do not yet know from the pleadings the relationship of the various corporate defendants to each other, we cannot dismiss the action against Puerto Rico Fuels. It is possible that without actually having employed Julio Vega or the plaintiff, such that it would have personnel records for them, Puerto Rico Fuels could have been sufficiently related to their direct employer to be considered their employer. "[E]ntities which exercise significant control over an employment situation may be proper defendants in a Title VII action even though they are not the immediate employer." *Baranek v. Kelly,* 630 F.Supp. 1107, 1113 (D.Mass.1986) (citing *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1340 (D.C.Cir.1973)). Plaintiff has asserted that Puerto Rico Fuels is her employer, and Puerto Rico Fuels has not yet produced sufficient evidence to disprove this claim.

## II.

### *Retroactivity of the Civil Rights Act of 1991*

■ Defendants move to dismiss the claims brought under the Civil Rights Act of 1991. This would be more appropriately formulated as an objection to plaintiff's retroactive application of the Act in requesting remedies from the amended version of Title VII in her claim. Plaintiff has requested compensatory and punitive damages along with a jury trial. The legislation comprising the Civil Rights Act of 1991 allowed a Title VII plaintiff to seek these remedies. 42 U.S.C. § 1981a. Even though plaintiff never specifically refers to section 1981a, which she need not do in notice pleading, this is clearly the statutory provision at the basis of her request for damages. Therefore, we must decide whether these remedial and procedural provisions may properly apply to an action concerning events that occurred prior to the passage into law of those provisions.

This case comes to us in the same posture as another case recently decided by this court. *Marrero–Rivera v. Dept. of Justice,* 800 F.Supp. 1024 (D.P.R.1992). As in *Marrero–Rivera,* the instant case was filed after the passage of the Act. The case was filed on July 16, 1992 and the Civil Rights Act of 1991 was passed on November 21, 1991. As in *Marrero–Rivera,* the alleged illegal activity took place before the passage of the Act, in the summer of 1991. In *Marrero–Rivera,* we decided that the Civil Rights Act of 1991 should be applied retroactively.[1] In the First Circuit, courts follow the presumption in *Bradley v. School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. The First Circuit had resolved the apparent tension between the facts in

---

**1.** It could be argued that this is not a situation involving true retroactivity. The law changed before this case was ever filed. This is considerably different from two other possible situations: (1) where the case had already been filed when the law changed, or (2) where the case had already been decided when the law changed. If we found that this case did not actually involve the retroactive application of the Civil Rights Act of 1991, we would not need to proceed any further. However, since it is possible to say that the application of a law to actions that preceded its passage is the retroactive application of that law, we continue. In either case, the outcome is the same; therefore, the ambiguity of the term "retroactive" does not trouble us.

*Bradley* and *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), by finding "that the touchstone for deciding the question of retroactivity is whether retroactive application of a newly announced principle would alter substantive rules of conduct and disappoint private expectations." *C.E.K. Indus. Mechanical Contractors, Inc. v. N.L.R.B.*, 921 F.2d 350, 358 n. 7 (1st Cir.1990). Applying those criteria to the fact situation in *Marrero–Rivera*, we found that the remedial provisions of the Civil Rights Act of 1991 should be applied retroactively.

Even though other circuits have found the Act to be of prospective application, nothing has happened in the First Circuit since 1990 to persuade us to take a different path. Since we last looked at this issue, several other circuits have considered the retroactivity of the 1991 amendments. The majority have found that the Civil Rights Act of 1991 may only be applied prospectively. *Gersman v. Group Health Association*, 975 F.2d 886 (D.C.Cir. 1992); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992); *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992). Only the Ninth Circuit has found that because two provisions of the Civil Rights Act of 1991, sections 109(c) and 402(b), explicitly forbid retroactive application, the whole act must be read as being retroactive. *Davis v. San Francisco*, 976 F.2d 1536 (9th Cir.1992). A small minority of jurisdictions have applied the test in *Bradley*. Most of the lower

courts in the Seventh Circuit used *Bradley* to find that the Civil Rights Act of 1991 should be applied retroactively. However, they were overturned on appeal by the Seventh Circuit, which found that the presumption in *Bowen* should be the rule, at least in cases where a judgment had already been entered. *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992);[2] *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225 (7th Cir.1992). Only the Eleventh Circuit strictly applied *Bradley*, and it found that the Act should not be applied retroactively to cases where judgments had already entered. *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992).

■ Following First Circuit case law, we apply the two-part test in *Bradley* to determine whether retroactive application of the Civil Rights Act of 1991 would be proper.[3] Where there have been recent changes in the law, the presumption is that the law presently in effect will be applied to actions before the court unless "(i) manifest injustice will result, or (ii) there is statutory direction or legislative history indicating that the applicable law is the old law." *Aledo–Garcia v. Puerto Rico National Guard Fund, Inc.*, 887 F.2d 354, 355 (1st Cir.1989). We, and numerous circuit courts, have already determined that the "statutory history" and "legislative history" of the Civil Rights Act of 1991 leave us without discretion. *See Gersman,* 975 F.2d at 890; *Johnson,* 965 F.2d at 1373; *Vogel,* 959 F.2d at 598; *Luddington,* 966 F.2d at 227; *Fray,* 960 F.2d at 1375–77.[4] We, therefore, turn to an analysis of whether the application of the law in exis-

---

2. The Seventh Circuit stated:
   Nevertheless, considering that Bowen is the general rule of construction, there is a flip side to the argument that courts should apply the procedural and damage provisions in effect at the beginning of proceedings. In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating procedure and damages and those provisions that affect substantive rights and obligations.

*Id.* at 940.

3. There have been two other cases in our Circuit which have found that the *Bradley* analysis should be applied. *Petitti v. New England Telephone and Telegraph Co.,* 1992 WL 359643, 1992 U.S.Dist. LEXIS 18112 (D.C.Mass Nov. 16, 1992); *Thomas v. Compugraphic Corp.,* C.A. No. 88–2315–WF at *8 (D.C.Mass. May 26, 1992).

4. Only the *Davis* court found that the intentions of Congress were clear. *Davis,* 976 F.2d at 1550.

tence at the time the court renders its decision would result in "manifest injustice." To accomplish this, we must look at: (1) the nature and identity of parties; (2) the nature of parties' rights; and (3) the impact of the change in the law upon the rights and obligations of the parties. *Aledo–Garcia*, 887 F.2d at 355; *see also Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020.

First, we consider the nature and identity of parties. The parties in this case are all private actors.[5] "Under the manifest injustice standard, the disappointment of private expectations that results from the implementation of a new rule must be balanced against public interest in the enforcement of that rule." *New England Power Co. v. United States*, 693 F.2d 239, 245 (1st Cir. 1982). In this case, the new rule concerns a significant piece of federal legislation. As stated by the Eleventh Circuit, "[e]very federal law is in a sense, a statement of national policy and is important." *Baynes*, 976 F.2d at 1373. The decision to allow recovery beyond the traditional equitable damages allowed by Title VII for intentional discrimination is a reflection of national attitudes toward the problem of employment discrimination. It is a piece of legislation which represents significant societal concerns. As the work place diversifies, the need to protect socially vulnerable groups becomes more pressing. It is clear that the public interest represented is significant. On the other hand private expectations must be protected. The entire purpose of controlling the retroactive application of laws is to prevent a situation where a private party acts in reliance on the law and is then punished for those actions.

Second, we look at the nature of the rights involved. The First Circuit has found that "the 'statutes affecting substantive rights and liabilities ... have only prospective effect.'" *Demars v. First Service Bank for Sav.*, 907 F.2d 1237, 1239 (1st Cir.1990) (quoting *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985)). Those provisions of a statute which make substantive changes to

a law clearly threaten to undermine the past actions by a party if applied retroactively. The definition of what is substantive is self-explanatory; all those portions of the law which are not procedural or remedial. Traditionally, "[p]rocedural innovations not likely to bias decision systematically in favor of one litigant rather than his opponent can, without serious affront to the values crystallized in the phrase 'rule of law,' be applied to cases pending when the innovations were adopted." *Luddington*, 966 F.2d at 228 (citations omitted). However, there could be so-called procedural innovations which do seriously bias the litigation process in favor of one litigant: *i.e.*, changing the statute of limitations. The key to the difference between a harmless procedural change and a harmful procedural change is whether a past act based upon the old law irredeemably affects the progress of the case such that the substantive rights are damaged. Judge Posner, in *Luddington*, finds that the availability of qualitatively different remedies, such as are found in the Civil Rights Act of 1991, has as much of an impact on the rights of the defendant as any change in the substantive law. *Luddington*, 966 F.2d at 229. Unless the First Circuit adopts this approach, we are not prepared to apply such standard in the context of civil rights legislation.

The amendments with which we are concerned here are those allowing plaintiffs in Title VII actions to request compensatory and punitive damages. These are remedial provisions. These new remedies bring along with them the procedural addition of a jury trial. No one will dispute that the availability of a jury trial is procedural and does not seriously hamper the rights of the defendant. The problem of retroactivity turns upon the new remedies made available by the Civil Rights Act of 1991. While an individual may predicate his decision to park illegally upon a cost/benefit analysis, this does not make that behavior any less illegal. If the fine were to suddenly increase ten-fold, he would have to accept that the illegal behavior was going to cost

---

**5.** If the party against whom the retroactive application would work "is a public party, then the

'struggle' ... is not as hard." *Aledo–Garcia*, 887 F.2d at 355–56.

more than he had planned.[6] While individuals and companies certainly need to be able to predict the extent of their potential liability should one of their employees sexually harass another, this is not a right upon which they may rely. The only reason they would be liable in this context is if they also had behaved illegally. As quoted by another district court in this circuit recently: "The law has never countenanced that an employer may weigh the legal consequences of his discrimination and choose to continue his unlawful conduct. An employer cannot pay for the right to discriminate because no such 'right' has ever existed. The law absolutely prohibits intentional discrimination." *Petitti v. New England Telephone & Telegraph Co.,* 1992 WL 359643, at *8, 1992 U.S.Dist. LEXIS 18112, at *27 (quoting *Robinson v. Davis Memorial Goodwill Industries,* 790 F.Supp. 325, 332 (D.D.C.1992). The changes in the law do not at all hinder the ability of a party to prove that it has not behaved illegally. Therefore, we find that the rights of the defendant affected are not unconditional rights upon which the parties relied. In other words, placing this in the context of the final step in the *Bradley* analysis, the impact of the law on the rights and obligations of the defendants is not so burdensome that it outweighs the public importance of the implication of a procedural or remedial change in the law.

## III.

### Pendent State Law Claims

The doctrine of pendent jurisdiction authorizes a federal court to hear a claim that has no independent basis for federal jurisdiction. There are three parts to any inquiry involving pendent state claims: (1) is there a "common nucleus of operative fact" with a federal claim that has sufficient substance to confer federal jurisdiction; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); (2) has Congress "expressly or by implication negated" the exercise of jurisdiction over the non-federal claim; *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (quoting *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)); and (3) may the court properly exercise its discretionary jurisdiction. *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40.

We do not need to consider either the first or second questions. The factual basis of this case is clearly shared by the federal and the state claims. The question of whether Congress has expressly or by implication negated the exercise of jurisdiction over non-federal claims in the Title VII context has been answered with a no. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974); *see Cuello–Suárez v. Autoridad de Energía Eléctrica,* 737 F.Supp. 1243 (D.P.R.1990); *see also Rosa v. Burns & Roe Services Corp.,* 726 F.Supp. 350 (D.P.R.1989).

The only question which remains is whether the court may properly exercise its jurisdiction. The factors to be considered are the following: (1) whether considerations of judicial economy, convenience, and fairness to the litigants are present; (2) whether the state law issues are clearly resolved on the state level; (3) whether state issues predominate in terms of proof, scope of issues or comprehensiveness of remedies; and (4) whether the divergence of state and federal issues is likely to create jury confusion. *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40. The first factor is important. In almost every case where factual issues predominate, efficiency would dictate that the state claims be tried together with the federal claims. In this case the facts lie at the center of the plaintiff's claim. The second factor is irrelevant in this case, since neither party has raised any question of unresolved state law issues.

---

**6.** Judge Posner's example of the fine for an unpaid parking ticket being changed to life imprisonment does not accurately parallel the difference between equitable damages and punitive damages. His example would be appropriate if Title VII had been amended to include criminal penalties.

This leaves the last two factors. Other courts in this district have declined to exercise their discretion to entertain pendent state law claims where the state issues predominate in terms of proof and comprehensiveness of remedies, thus increasing the possibility of jury confusion. *Linares v. University of Puerto Rico,* 722 F.Supp. 910, 912 (D.P.R.1989) (different burden of proof and remedy incline court not to exercise discretion); *Sward v. San Juan Puerto Rico Convention Bureau, Inc.,* 679 F.Supp. 148 (D.P.R.1987). In those cases, there were two significant differences between the state and the federal claims: different remedies and different burdens of proof. However, now that Title VII has been amended to include the possibility of compensatory and punitive damages for intentional discrimination, that difference has been eliminated. However, the question raised by the defendants as to whether the different burdens of proof under the federal and state laws would be too confusing to the jury remains. The First Circuit has found that it is not an abuse of a judge's discretion to try two issues in which the burden of proof is so completely different as in the case of Title VII or ADEA and Puerto Rico employment discrimination law. *Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir.1985). Therefore, we find that the issue of the different burdens of proof can be dealt with in the judge's instructions to the jury and need not lead to confusion. Concerns of judicial efficiency clearly dominate, and we can not refuse to hear these claims on this ground alone.

### Conclusion

We DENY the motion to dismiss by Puerto Rico Fuels. We DENY defendants' motion to prevent the application of Title VII as amended by the Civil Rights Act of 1991 to this case. In addition, we DENY the motion of the defendants to dismiss the pendent state claims.

IT IS SO ORDERED.