Rebecca A. DOWNUM, Plaintiff,

v.

CITY OF WICHITA, KANSAS and
James Sparr, Defendants.

No. 83 4377.

United States District Court,
D. Kansas.

Oct. 3, 1986.

Fred W. Phelps, Jr., Topeka, Kan., for plaintiff.

John Dekker, City Atty., Gary E. Rebenstorf, Joe Allen Lang, Asst. City Attys., Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is before the court on defendants' motion for summary judgment. Plaintiff has filed suit seeking relief under 42 U.S.C. §§ 1983, 1988 and 2000e, *et seq.*, as well as directly under the United States Constitution alleging acts of sex discrimination occurring incident to her employment as a firefighter and dispatcher with the city. Defendant James Sparr is the Fire Chief of the City's Fire Department. Defendants previously moved to dismiss, but have since filed this summary judgment motion and have presented matters outside the pleadings. The court therefore rules on defendant's summary judgment motion and finds the motion to dismiss moot.

The court and the parties are familiar with the well-established rules applicable to the determination to grant or deny summary judgment, and the court finds it unnecessary to repeat those rules herein.

*Constitution*

■ Plaintiff has made claims of employment discrimination directly under the United States Constitution, and argues that such a remedy should be implied against a city for employment discrimination. *See Bivens v. Six Unknown Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Rhodes v. City of Wichita,* 516 F.Supp. 501 (D.Kan.1981). This court has previously declined to apply the *Rhodes* holding to cases before it, *see e.g., Colbert v. City of Wichita,* No. 75–306–C6 (Aug. 3, 1983), and prefers the approach set forth in *Jensen v. Bd of County Com'rs for Sedgwick County,* 636 F.Supp. 293 (D.Kan. 1986) and cases cited therein. Because plaintiff has "alternate avenues of relief" under Title VII and § 1983, the court finds that plaintiff is precluded from bringing suit directly under the constitution. Summary judgment on plaintiff's *Bivens* claim is therefore appropriate.

*§ 1988*

Defendant next argues that 42 U.S.C. § 1988 does not provide an independent cause of action for plaintiff's complaint. This is correct. *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir.1985); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir.1977). Nevertheless, § 1988 allows the court the discretion to award attorney's fees to the prevailing party in civil rights actions. Since plaintiff is bringing a § 1983 claim and prays for attorney's fees, the court finds plaintiff's pleading of § 1988 as a basis for recovery to be proper.

*Title VII*

*Timely Filing*

Defendants claim that plaintiff failed to file a timely charge of sex discrimination with the EEOC. The filing of a timely charge of sex discrimination with the

EEOC is a condition precedent to the filing of a Title VII claim in federal court. *Smith v. Oral Roberts Evangelistic Ass'n, Inc.*, 731 F.2d 684, 686 (10th Cir.1984). The fact that the EEOC has issued a "right to sue" letter does not relieve plaintiff from the burden of demonstrating compliance with that time limitation. *See, e.g., Smith*, 731 F.2d at 686.

It is uncontested that plaintiff filed her charge with the EEOC on December 19, 1983, 263 days after her transfer from firefighter to dispatcher. Defendant contends plaintiff was obligated to file her charge with the EEOC within 240 days of the alleged discriminatory act, which defendant claims was plaintiff's transfer from firefighter to dispatcher on March 31. Plaintiff claims the applicable time limit is not 240 but 300 days, but plaintiff's filing was timely even if the 240 day limit is used because plaintiff was a victim of continuing discrimination through July 17, 1983, the date of her termination as dispatcher.

Although the doctrine of continuing discrimination may exempt a plaintiff from the strict time requirements of Title VII, the court does not reach the issue of its applicability in this case. Rather, the court relies upon the fact that plaintiff filed with the EEOC within 300 days of her transfer on March 31.

The statutes establish that in a deferral state, such as Kansas, "... no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated ..." 42 U.S.C. § 2000e–5(c). The 60–day deferral period set forth in (c) must be read in conjunction with the time requirements set forth in (e):

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Defendants' assertion of a 240–day requirement is based upon *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), which stated:

[A] complainant in a deferral state having a fair employment practice agency over one year old need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved.

*Id.* at 814 n. 16, 100 S.Ct. at 2491 n. 16. The court did not hold, as defendant alleges, that a plaintiff in a deferral state must file his charge within 240 days or lose his right to proceed in federal court. Rather, the court's language recognized that if a plaintiff filed a state or local charge within 240 days of the discriminatory event, the 60–day deferral period would run on the 300th day, and plaintiff's filing with the EEOC on that 300th day would be timely. As the court in *Mohasco* stated:

If a complainant files later than [240 days] (but not more than 300 days after the practice complained of), his right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300 day period.

*Id.* at 814 n. 16, 100 S.Ct. at 2491 n. 16.

The *Mohasco* court also noted that the state proceedings may be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself. *Id.* at 816, 100 S.Ct. at 2492. *See Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Additionally, it is now

established in this circuit that Title VII does not require a plaintiff to file a charge of discrimination within state-imposed time limitations as a jurisdictional prerequisite to the 300–day federal filing period for deferral states. *Smith v. Oral Roberts Evangelistic Ass'n, Inc.*, 731 F.2d 684 (10th Cir.1984), overruling *Dubois v. Packard Bell*, 470 F.2d 973 (10th Cir.1972) and *Dickerson v. City Bank & Trust Co.*, 575 F.Supp. 872 (D.Kan.1983). The *Smith* holding is consistent with EEOC's regulation which provides in a deferral state:

> ... charges ... apparently untimely under the applicable state or local statute of limitations are filed with the commission upon receipt. Such charges are timely if received by the commission within 300 days from the date of the alleged violation.

29 C.F.R. § 1601.13(a)(3).

Regulations also clarify that a state or local agency with authority to grant relief from a discriminatory practice may waive its right to the 60–day period of exclusive processing with respect to the charge. *See* 29 C.F.R. § 1601.13(a)(4)(iii). Previous cases in this district have noted the existence of a worksharing agreement between the KCCR and the EEOC which contains a waiver of the sixty-day deferral rights of the KCCR, and a clause assigning to the EEOC for initial processing all charges filed initially with the EEOC. *See, e.g., Annis & Rasmussen v. Kansas State University, et al.*, No. 78–4336 (February 18, 1983).

■ In the present case, plaintiff filed her charge of discrimination with the EEOC within 300 days of the allegedly discriminatory event. Kansas is a deferral state to which the extended 300–day period applies. Plaintiff may have "initially instituted proceedings" with the KCCR by the EEOC's act of forwarding to the KCCR a copy of plaintiff's charges. Lastly, the KCCR may have waived its 60–day deferral period by virtue of a worksharing agreement between it and the EEOC. Because these questions are unanswered by the record the court entertains reasonable doubt about the defendant's entitlement to

summary judgment on the issue of timely filing, and therefore finds summary judgment inappropriate.

*Constructive Discharge*

Defendant seeks summary judgment on plaintiff's claim that she was constructively discharged from her position as dispatcher on July 17, 1983.

The court is compelled to find plaintiff's "constructive discharge" theory meritless, as no rational argument in support of that theory can be made under the facts. The Tenth Circuit has recently clarified that where a constructive discharge is alleged, the focus is not upon the subjective intent of the employer, but upon the effect of the working conditions upon a reasonable person in the employee's position. *See Derr v. Gulf Oil Corp.*, 796 F.2d 340 (10th Cir. 1986). A finding of constructive discharge depends upon whether the employer, by its discriminatory acts, has made working conditions so difficult that a reasonable person in the employee's position would have felt compelled to resign. *Derr*, 796 F.2d at 343.

■ In the present case it is undisputed that plaintiff did not resign from her position as dispatcher. Rather, plaintiff's employment with the city was terminated on or around July 17, 1983 for the stated reason of plaintiff's violation of defendant's sick leave policy. Plaintiff's claim of constructive discharge is premised upon her allegation that she would have resigned from her employment as dispatcher had defendant not terminated that employment. Plaintiff has cited no authority to the court for the application of a constructive discharge theory where a plaintiff has not resigned but has actually been discharged from employment, nor can the court imagine any such ill-reasoned authority could be found.

Even if such a theory were cognizable, no acts of the defendant have been shown which would have compelled a reasonable person in plaintiff's position to resign. Accepting plaintiff's allegations as true, plaintiff was "forced to quit" the Emergency Communications Department because she was rushed through the training and put

on the city fire department dispatch board before she felt she was ready for that responsibility. Plaintiff was not comfortable with a desk job and was told to be grateful for that position. (Plaintiff's deposition September 12, 1984 pp. 145–46). No other facts are alleged in support of plaintiff's claim of "constructive discharge." (Plaintiff's deposition September 12, 1984 p. 150.)

■ Plaintiff's subjective feelings of being rushed through her training and of not being ready to handle the position in which she was placed do not constitute even circumstantial evidence of defendant's discriminatory gender-based acts. Her complaints do not demonstrate that discrimination based on sex created a hostile or abusive work environment in the Emergency Communications Department. Accordingly, summary judgment is granted on plaintiff's constructive discharge theory. The court notes that neither plaintiff's complaint nor the pretrial order sets forth a claim for actual discriminatory discharge from the plaintiff's position as dispatcher.

*Sexual Harassment*

■ Defendant's claim of sexual harassment in her position as a firefighter is equally unsupported by the record. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court clarified that two types of sexual harassment are actionable under Title VII: (1) harassment that involves the conditioning of employment benefits on sexual favors, and (2) harassment that creates a hostile or offensive working environment, while not affecting economic benefits. Plaintiff claims harassment of the latter type.

Plaintiff's deposition includes more than several belittling or offensive remarks to plaintiff by fellow recruits. One recruit stated that plaintiff would last just one month, another refused to take orders from a "damn bitch," and several noted aloud that plaintiff was not strong enough to perform particular tasks at hand. On one occasion plaintiff was invited to join the men in the shower, since she was "doing a man's job." In her deposition, plaintiff stated that some comments were just teasing, and that all comments expressed the individual's personal sentiments and not the opinions of the fire department. Plaintiff additionally alleges that supervisor Olick drew her aside on five or six occasions for special instruction and explanation, but acknowledged that he may have been just trying to help her through training. (Downum deposition July 18, 1984 p. 166). No other evidence supports plaintiff's claim of sexual harassment.

Objectively viewed, the conduct complained of constitutes an annoying, but fairly insignificant part of the total job environment. Their effect upon plaintiff's work environment was de minimus and not so significant that an average female recruit would have found her overall work experience to be substantially and adversely affected. *See Rabidue v. Osceola Refining Co.*, 584 F.Supp. 419 (D.C.Mich. 1984). In short, plaintiff has failed to support her claim of a hostile or offensive working environment. *See Downes v. FAA*, 775 F.2d 288 (Fed.Cir.1985). Additionally, plaintiff has made no attempt to show that the acts or comments of fellow recruits should be attributed to either defendant. *See Meritor*, 477 U.S. at ——, 106 S.Ct. at 2408, 91 L.Ed.2d at 63. Plaintiff has not alleged sexual harassment in her position as a dispatcher. Summary judgment is therefore appropriate on plaintiff's claim of sexual harassment.

*Unequal Job Assignments*

■ Plaintiff makes no claim of disparate treatment during her training period. Plaintiff claims she suffered disparate treatment after her training period until her transfer to dispatcher because her job assignments and duties afforded her less hands-on experience on fire engines and their equipment. The record before the court reveals that plaintiff was at Station 1 from June 3, 1982, the date her training ended, to March 30, 1983, the date of her transfer. To show disparate treatment, plaintiff must show she was treated differently than similarly situated employees because of her sex. The court views only

rookies or probationary employees as similarly situated to plaintiff. No such employee was at Station 1 until Kevin Lynch, also a rookie, transferred there on November 6, 1982. An affidavit of Floyd A. Crawford reveals that from November 6, 1982 to March 30, 1983 plaintiff was assigned to Engines 33 and 1 more often than was Kevin Lynch. These two engines are the only ones upon which plaintiff's claim is based. The court finds it appropriate to grant summary judgment on this issue, based on this unrefuted affidavit.

*Transfer/Dismissal*

Defendants seek summary judgment on plaintiff's claim of discriminatory discharge from her position as firefighter. The stated reason for plaintiff's termination as a firefighter was a 52° curvature of plaintiff's spine. Plaintiff does not dispute that she has scoliosis, or that her degree of curvature, both when she was hired as a firefighter and when she was discharged from that position, was 52°. The record reveals the following facts. When plaintiff was hired in April of 1982, defendants knew she had scoliosis, but believed her degree of curvature to be 32°. The physician who examined plaintiff prior to her hiring found her to be unemployable due to her scoliosis. The city's medical policy at the time, although not included in the record, apparently set 30° as the maximum allowable degree of spine curvature. Defendants nonetheless wished to hire plaintiff, and revised the medical standards in 1983 during her probationary period to accommodate her hiring in some manner. When plaintiff took a physical exam on March 17, 1983 to comply with those new medical standards, her degree of curvature was revealed to be 52°. Plaintiff was terminated from her position as firefighter soon after defendants learned of this information.

These facts do not support a claim for discriminatory discharge. Defendants' right to establish and enforce medical standards reasonably related to the position of firefighter is not challenged. Nor does plaintiff claim that the new medical standards adopted by defendants in 1983 discriminated against women, either facially or as applied.

■ That defendants erroneously believed plaintiff to have a 32° curvature does not preclude them from dismissing plaintiff from a position as firefighter upon learning plaintiff actually had a 52° curvature. Even if this court were to assume that defendants knew, upon hiring plaintiff, that her curvature was 52°, defendants could still dismiss plaintiff for that reason or no reason at all during her probationary period. This court cannot infer from the mere fact of plaintiff's transfer to dispatcher or dismissal from firefighter that sexual discrimination has occurred. Defendant's motion for summary judgment on this issue must be granted.

*§ 1983*

Defendant next seeks summary judgment on plaintiff's claim for relief under 42 U.S.C. § 1983. Plaintiff alleges defendants deprived her of her constitutional right to due process and equal protection of the laws under color of state law by their discriminatory acts. The court first examines plaintiff's claim of a due process violation.

*Due Process*

■ When bringing a § 1983 action, a public employee has the burden to show that she possesses a property or liberty interest in her employment in order to trigger the due process protections afforded by the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Vinyard v. King,* 728 F.2d 428, 430 (10th Cir.1984). Whether plaintiff has a property interest under Kansas law sufficient to trigger the protections of the Fourteenth Amendment is determined by whether the terms of employment create a legitimate claim of entitlement to her job rather than a mere unilateral expectation of continuing in her position. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Vinyard,* 728 F.2d at 432.

In the present case, the record conclusively demonstrates that plaintiff was a probationary employee at the time she was transferred from her position as firefighter

to her position as dispatcher, as well as at the time she was terminated from her dispatcher job. As a probationary employee, plaintiff had no constitutionally protected property interest in continued employment. *Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984); *Walker v. United States*, 744 F.2d 67, 68 (10th Cir.1984). Plaintiff's belief that she could only be terminated for cause was a mere unilateral expectation.

■ Plaintiff also argues that her transfer may have implicated a liberty interest so that procedural due process would require a hearing. She contends defendants publicized false and defamatory information upon her transfer suggesting she was not competent to perform as a firefighter, and that such publicity damaged her future career opportunities.

"[F]or an employee to make a successful liberty deprivation claim she must show that her dismissal resulted in the *publication* of information which was *false* and *stigmatizing*." *Asbill v. Housing Authority of the Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1503 (10th Cir.1984) (emphasis in original) (footnotes omitted); *see also Rich v. Secretary of the Army*, 735 F.2d 1220, 1227 (10th Cir.1984); *Developments in the Law, supra*, 97 Harv.L.Rev. at 1789 (emphasis added) (to establish a liberty interest, "a public employee must now (1) show that he was *stigmatized* in connection with an alteration of her legal status as an employee, (2) allege that the stigma arose from substantially *false* characterizations of the employee or her conduct, and (3) demonstrate that the damaging characterizations were made *public* through channels other than the litigation initiated by the employee.")

*Sipes*, 744 F.2d at 1421.

The court finds that plaintiff's transfer from firefighter to dispatcher did not implicate a liberty interest for two reasons. First, there is no evidence that the allegedly stigmatizing information was made public by the defendants. The record reveals that plaintiff and not defendants initiated the publication of information concerning her transfer. Secondly, the reasons given for plaintiff's transfer were not sufficiently stigmatizing to implicate a liberty interest. Such an interest is implicated where a person's good name, reputation, honor, or integrity is at stake, or his freedom to take advantage of other employment opportunities is foreclosed, because of what the government is doing to him. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Rich v. Secretary of the Army*, 735 F.2d 1220, 1226–27 (10th Cir.1984); *Miller v. City of Mission*, 705 F.2d 368, 373 (10th Cir.1983). Here, the reason given for plaintiff's transfer, even assuming it was made public by the government, was plaintiff's scoliosis. Unlike an accusation of dishonesty or immorality, such a reason is not stigmatizing. Additionally, there has been no showing in the record that plaintiff has been foreclosed from other employment opportunities. Rather, plaintiff admits in her deposition that after her transfer, the Chief of the Sedgwick County Fire Department told her he would be more than happy to employ her as a firefighter, despite her scoliosis. (Downum deposition September 12, 1984 p. 194). Plaintiff did not apply for employment with the Sedgwick County Fire Department because she considered it to be a "very slow job."

The court finds neither a material question of fact concerning plaintiff's due process claims, nor any support in the record for such claims. The court therefore examines plaintiff's remaining § 1983 claim, that plaintiff was denied the equal protection of the laws.

*Equal Protection*

■ Plaintiff's equal protection claim is premised upon plaintiff's allegation that, because of her sex, she was treated differently than similarly situated persons, *i.e.* the other probationary firefighters. Even accepting that allegation as true, no cause of action is stated under the equal protection clause of the Fourteenth Amendment. Although the crux of an equal protection claim is that all persons similarly situated shall be treated alike, *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64

L.Ed. 989 (1920), it is an elemental prerequisite for equal protection analysis that there be some legislative or administrative scheme or state-promulgated rules which are subject to judicial review. *Parham v. Hughes,* 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979); *Doe v. McFaul,* 599 F.Supp. 1421, 1429 n. 5 (E.D. Ohio 1984). "The function of [the Equal Protection Clause] is to measure the validity of classifications created by state laws." *Parham,* 441 U.S. at 358, 99 S.Ct. at 1749.

It is well established that claims of sexual discrimination are cognizable under the equal protection clause. *See Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). However, reported cases finding a violation of that clause reveal some legislative or administrative scheme or state-promulgated policy which is subject to review. *See, e.g., Reed,* 404 U.S. 71, 92 S.Ct. 251 (Idaho statute gave preference to men over women as administrator of decedent's estate); *Ludtke v. Kuhn,* 461 F.Supp. 86 (S.D.N.Y.1978) (formal policy made by Baseball Commissioner and approved by American League President required that accredited female sports reporters be excluded from Yankee Stadium locker room); *Scott v. Opelika City Schools,* 63 F.R.D. 144 (D.C.Ala.1974) (school board policy treated maternity leave differently from other sick leave); *see Thurman v. City of Torrington,* 595 F.Supp. 1521 (D.C.Conn. 1984) (city's pattern or practice of affording inadequate or no police protection to women abused by their husbands held tantamount to an administrative classification used to implement the law in a discriminatory fashion); *Bohen v. City of East Chicago,* 799 F.2d 1180 (7th Cir.1986) (policy or custom of state was established by conscious failure of supervisory officials to protect against general, on-going and accepted harassment of female employee.)

Some degree of specificity is required in the pleading of a custom or policy on the part of a municipality. Mere conclusory allegations devoid of factual content will not suffice. Plaintiff's complaint alleges that "a pattern, practice and policy of sex discrimination against women exists with defendants." Plaintiff's brief (# 8 p. 9) states only:

The overall factual background of this situation clearly shows a custom of discrimination against women firefighters. Plaintiff was the first firefighter hired and she was terminated from that position before she had the opportunity to become a permanent employee. How much more of a custom or policy of sex discrimination could there be?

Plaintiff's response to defendants' motion for summary judgment states at page 12: "Plaintiff is the first female ever hired by the City of Wichita as a firefighter. That fact alone strongly suggests an historical pattern and practice of blatant sex discrimination in employment." Plaintiff's other pleadings contain no reference to any policy or custom of sex discrimination by the defendants.

"Official policy" may refer to formal rules which establish fixed plans of action to be followed under similar circumstances, or to a single decision to adopt a particular course of action where that decision is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 483, 106 S.Ct. 1292, 1298, 1300, 89 L.Ed.2d 452, 463, 465 (1986). *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The Tenth Circuit has recently interpreted *Pembaur* in these words:

The Supreme Court has ... made it clear that, although a single incident of unconstitutional conduct will not support a finding of a municipal policy, once a policy is established a single application will satisfy the law's requirements.

*Lusby v. TG & Y Stores, Inc.,* 796 F.2d 1307, 1312 n. 5 (10th Cir.1986).

The fact that plaintiff was the city's first female firefighter is not sufficient to show the existence of a discriminatory policy toward females. Plaintiff has not specified other acts as a basis for the city's custom or policy. Plaintiff admits she did not complain through official channels of any treat-

ment she received, and it is uncontested that defendant Sparr did not know of any sexually oppressive working conditions or of any specific instances of sexual harassment toward the plaintiff. Accordingly, no equal protection claim has been supported by the facts. The court finds summary judgment appropriate on plaintiff's cause of action under § 1983, as to both the due process claim and the equal protection claim.

Because the court has found summary judgment appropriate on each of plaintiff's claims, it is unnecessary to address defendant Sparr's entitlement to the affirmative defense of qualified immunity.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted.