Martha **MARRERO RIVERA**, Plaintiff,

v.

The **DEPARTMENT OF JUSTICE OF the COMMONWEALTH OF PUERTO RICO**; Pedro Geronimo Goyco Amador; Iris Dolores Melendez Vega; Zenaida Acosta Ronda, and Jose Angel Santiago Martinez, Individually and in Their Official Capacities, Defendants.

Civ. No. 92–2268.

United States District Court,
D. Puerto Rico.

April 30, 1993.

Francisco M. Dolz–Sánchez, Bayamón, P.R., for plaintiff.

Kenneth Colón–Alicea, Director, Federal Litigation Div. Dept. of Justice, Com. of Puerto Rico, José G. Fagot–Díaz, Ramirez & Ramirez, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This case brings with it the reappearance of issues resolved by this court in an earlier version of the same case. *Marrero–Rivera v. Dept. of Justice*, 800 F.Supp. 1024 (D.P.R. 1992) ("*Marrero–Rivera I*"). In *Marrero–Rivera I*, we dismissed plaintiff's Title VII claims without prejudice for failure to exhaust administrative remedies. 42 U.S.C. § 2000e—2000e–17. We also dismissed plaintiff's claims under 42 U.S.C. § 1983 with prejudice as preempted by the recently amended version of Title VII. *See* Civil Rights Act of 1991, P.L. No. 102–166, 105 Stat. 1071 (1992). No appeal was taken and that determination is now final.

Now, plaintiff has filed an almost identical complaint. Aside from adding two defendants, Zenaida Acosta–Ronda and José Angel Santiago–Martínez, plaintiff is alleging some of the same causes of action against defendants the Department of Justice, Goyco–Amador, and Meléndez–Vega that were previously addressed in *Marrero–Rivera I*. Defendants Goyco–Amador, Meléndez–Vega, and Santiago–Martínez move to dismiss the section 1983 claims because plaintiff is collaterally estopped from raising the claims. As to the Title VII claims, they again argue that plaintiff has failed to exhaust administrative remedies. Defendant Acosta–Ronda moves to dismiss on a multitude of grounds: That she is not a Title VII employer; that her actions do not constitute a violation of Title VII; that section 1983 is preempted by Title VII, and that plaintiff failed to exhaust administrative remedies. All movants are requesting Rule 11 sanctions.

## I.

### Facts

We refer the reader to our earlier opinion for the specific details of this case. *Marrero–Rivera I*, 800 F.Supp. 1024 (D.P.R.1992). The general background of the case is that plaintiff alleges Meléndez–Vega subjected her to unwanted sexual advances in the Spring of 1991. After the plaintiff rejected these advances, she claims that Meléndez–Vega complained, allegedly telling others that plaintiff was not qualified to perform her job. Plaintiff further alleges that Goyco–Amador, Meléndez–Vega's supervisor, knew of plaintiff's complaints of sexual harassment and ignored them. On July 19, 1991, plaintiff met with Goyco–Amador, at which meeting he insisted that plaintiff transfer, citing complaints by Meléndez–Vega about plaintiff's behavior. After she requested a transfer at Goyco–Amador's insistence, plaintiff was moved to a new position. As a result of this transfer, plaintiff alleges that her job situation deteriorated. She was unable to take advantage of the reclassification for which she had applied, because she was no longer in her position with Meléndez–Vega when it was granted. Her new position was less secure, since it required that she take an exam and endure a probationary period. Plaintiff alleges that this transfer constituted a demotion.

The facts which are new to the present case are those involving Acosta–Ronda and Santiago–Martínez. Acosta–Ronda was apparently assigned as special prosecutor by the Secretary of Justice to investigate plaintiff's allegations of sexual harassment against defendant Meléndez–Vega. Plaintiff alleges that Acosta–Ronda coerced witnesses and distorted evidence in an effort to support the defendants' theory of the events. José Angel Santiago–Martínez is the chief deputy of the San Juan District Attorney's Office. Plaintiff alleges that he was the first high-ranking officer of the Department of Justice to learn that defendant Meléndez–Vega was harassing the plaintiff. She also claims that Santiago–Martínez lied in a statement taken by Acosta–Ronda. Their actions led to the administrative exoneration of defendant Meléndez–Vega in the internal department investi-

gation of Meléndez–Vega's actions. The details of their actions, with dates and more specific activities, are not included in the complaint.

## II.

### *Discussion*

#### A. *Title VII*

All of the defendants find fault with plaintiff's Title VII claims. The defendant Goyco–Amador moves to dismiss arguing that plaintiff failed to exhaust administrative remedies. Defendant Meléndez–Vega moves to dismiss because the plaintiff failed to timely file administrative claims. Defendant Santiago–Martínez moves to dismiss because he was not included in the original charge mentioned in the Attorney General's right-to-sue letter. Defendant Acosta–Ronda moves to dismiss for a number of reasons: she is not a Title VII employer, her actions do not constitute a violation of Title VII, and plaintiff has failed to exhaust administrative remedies.

#### 1. *Goyco–Amador*

■ Plaintiff has submitted a right-to-sue letter from an Assistant Attorney General of the United States Department of Justice. This letter was sent in response to a request by plaintiff for a right-to-sue letter from the EEOC. The EEOC transmitted this request for notice of right to sue to the Department of Justice because the suit involved a governmental agency. "[W]here the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue ... [w]here a charging party has requested a notice of right to sue." 29 C.F.R. § 1601.28(d). From the right-to-sue letter, which refers specifically to the EEOC charge, we assume the letter relies on EEOC approval of the right to sue.

A right-to-sue letter signifies that the agency has chosen not to pursue legal action. Although the regulations provide two separate procedures for getting approval to sue, one for government defendants and one for

non-government defendants, this does not mean that the requirement of obtaining the right to sue for both types of defendants cannot be fulfilled with one right-to-sue letter. We interpret the regulations as follows: once the EEOC has determined that it will issue a right-to-sue letter for the non-government defendants, it passes the request on to the Department of Justice for its decision as to the government defendants. According to this interpretation, the letter from the Department of Justice implies the right to sue for the non-government defendants. Indeed, the letter from the Assistant Attorney General states that "you are hereby notified that you have the right to institute a civil action under Title VII ... against the respondents named in your charge." The charge names the Department of Justice, Goyco–Amador, and Meléndez–Vega. We find that plaintiff has fulfilled the requirements for filing suit in federal court and exhausted administrative remedies.

#### 2. *Meléndez–Vega*

Defendant Meléndez–Vega argues that, with regard to her, the plaintiff did not timely file her charge with the "EEOC or ... appropriate deferral agency." 42 U.S.C. § 2000e–5(f)(1). A plaintiff has 180 days from the date of the alleged unlawful practice to file a charge with the EEOC if there is no state deferral agency in the jurisdiction. 42 U.S.C. § 2000e–5(e) (1992); 29 C.F.R. § 1601.13(a) (1992). Where there is a state deferral agency in the jurisdiction, however, the charge need only be filed with the EEOC within three-hundred days of the alleged unlawful practice. *Id.* In this case, defendant is arguing that the Anti–Discrimination Unit ("ADU") of the Commonwealth of Puerto Rico Department of Labor is not a state deferral or FEP agency.[1]

"The Commonwealth of Puerto Rico Department of Labor has been designated as a FEP agency for all charges except ... charges alleging violations of Title VII by agencies or instrumentalities of the Government of Puerto Rico.... For these types of

---

1. The state deferral agencies are also referred to as FEP agencies in the regulations: "the term FEP agency shall mean a State or local agency

which the Commission has determined satisfies the criteria stated in section 706(c) of title VII." 29 C.F.R. § 1601.3(a) (1992).

charges it shall be deemed a 'Notice Agency.'" 29 C.F.R. § 1601.74 n. 5. The distinction between a notice agency and a deferral agency is significant because the EEOC does not "defer to notice agencies, [although] it does notify the agency of the filing of charges." Arthur Larson, *Employment Discrimination* § 48.12(a)(2) at 9A–24 (1992); *see also* 29 C.F.R. § 1601.71(b). This means that the submission of the charge to local scrutiny only adds 120 days to the existent 180–day statute of limitations for filing with the EEOC if the local agency is a state deferral agency. 42 U.S.C. § 2000e–5(e). A charge in a jurisdiction where the state or local agency is designated as a notice agency does not benefit from the extended statute of limitations period. 29 C.F.R. § 1601.13(1).[2] In this case, which involves both government and non-government defendants, there were two filing deadlines: 180 days for suit against the Department of Justice and 300 days for suit against the individual defendants.

■ The discriminatory act begins the ticking of the filing clock. "Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a). This definition of a discriminatory act is accepted by the courts as guidance. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *see Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 781–82 (1st Cir.1990). In the case of *quid pro quo* discrimination, which is the case here, the "employee's reaction to the supervisor's harassment [must have] affected a tangible aspect of her employment." *Chamberlin,* 915 F.2d at 783

(quoting *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982). The point in time at which a tangible aspect of plaintiff's employment was affected is the point at which the clock starts to run.

■ Defendant Meléndez–Vega argues that since the last "incident" between her and the plaintiff allegedly occurred on April 30, 1991, that is the date on which the filing clock began to run. However, while no other "incidents" between the two women occurred after that date, the plaintiff did hear rumors on numerous occasions that Meléndez–Vega wanted her terminated from her job. That Meléndez–Vega was working to have plaintiff transferred may be inferred from the information given to plaintiff in her July 19, 1991 meeting with Goyco–Amador. This meeting marks the date on which there was an actual change in plaintiff's job situation. Plaintiff was called into the office of Goyco–Amador and informed that Meléndez–Vega no longer wanted to work with her. She was informed that she could not stay at the San Juan District Attorney's Office and that her transfer should be realized as soon as possible. She was also informed that after what had transpired, she could not hope that Meléndez–Vega would recommend her for a reclassification. This transfer is alleged to have affected tangible aspects of plaintiff's employment: She suffered a decrease in job classification, was forced to forego her reclassification, and the new job was less secure. The transfer was a result of plaintiff's reaction to the alleged actions of Meléndez–Vega, which plaintiff characterized as sexual. The reasons given for the transfer were Meléndez–Vega's dissatisfaction. Therefore, there is a direct link between Meléndez–Vega's actions and plaintiff's transfer. We can place the alleged discriminatory act, the result of the harassing activity, on July 19, 1991. This is the date upon which the filing clock should begin to run.

From plaintiff's complaint it is not clear when she filed with the EEOC. She seemed to be under the impression that the EEOC had delegated its authority to "receive and

2. 29 C.F.R. § 1601.13(a)(1):
 Charges arising in jurisdictions having no FEP agency are filed with the Commission upon

receipt. Such charges are timely filed if received by the Commission within 180 days from the date of the alleged violation.

investigate complaints" to the ADU. While the EEOC has not delegated authority, the plaintiff is correct in understanding that the charge is "deemed to be filed with the Commission upon expiration of 60 ... days after a written and signed statement of facts upon which the charge is based was sent to the FEP agency by registered mail or was otherwise received by the FEP agency." 29 C.F.R. § 1601.13(b). Plaintiff alleges that she filed with the ADU on August 28, 1991. She also alleges that she formally filed with the EEOC on January 3, 1992. Whether she filed in August with the ADU or in January with the EEOC, both are within the required statutory period. Indeed, for purposes of her suit against Meléndez–Vega, plaintiff need only have filed within 300 days of the alleged violations, so either of these dates is well within the filing period.

### 3. Santiago–Martinez and Acosta–Ronda

■ As defendants Santiago–Martínez and Acosta–Ronda correctly point out, they were not included in the charge filed with the EEOC. The charge must contain "[t]he full name and address of the person against who the charge is made, if known." 29 C.F.R. § 1601.12(a)(2). The right-to-sue letter from the Assistant Attorney General specifically states that the plaintiff has the right to sue the parties included in her charge. The charge was filed against the Department of Justice, Goyco–Amador, and Meléndez–Vega, the parties in the original suit. However, a charge may be amended after filing "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b); see Philbin v. General Elec. Capital Auto Lease, Inc., 929 F.2d 321 (7th Cir.1991). Such an amendment, "related to or growing out of the subject matter of the original charge," relates back to the date the charge was received. 29 C.F.R. § 1601.-12(b). The amendments which may relate back are "technical" amendments. The addition of new parties to a charge is a "substantive" amendment.

Neither Santiago–Martínez nor Acosta–Ronda were named in the original charge.

Any attempt to file a charge at this point would be untimely. Therefore, plaintiff's action against them is barred. Plaintiff's actions against Santiago–Martínez and Acosta–Ronda under Title VII are dismissed.

### B. Section 1983

■ Our discussion of plaintiff's claims under section 1983 will be organized in three parts: The section 1983 claims against Goyco–Amador and Meléndez–Vega, the section 1983 claim against Santiago–Martínez, and the section 1983 claim against Acosta–Ronda.

#### 1. Goyco–Amador and Meléndez–Vega

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

NLRB v. Donna–Lee Sportswear Co., 836 F.2d 31, 33 (1st Cir.1987) (citing Restatement of Judgments 2d § 27 at 250). The defense of collateral estoppel is only available if there has been a "full and fair opportunity" to litigate the issue in a prior hearing. Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971). The issue of whether Title VII, in its currently amended form, preempts a suit against the Department of Justice, Goyco–Amador and Meléndez–Vega under section 1983, has already been litigated before this court. Marrero–Rivera I, 800 F.Supp. at 1031. In apposition to the argument of the plaintiff, who apparently did not thoroughly read our previous decision, it was exactly on the basis of the preemption issue that we dismissed those section 1983 claims. In the earlier case, defendants moved to dismiss on the basis that the section 1983 claims were preempted by the amended Title VII with its expanded remedies. Plaintiff opposed the motion to dismiss. The court granted the motion to dismiss on that basis. Plaintiff did not move

to reconsider and did not appeal. Plaintiff's new suit against the same defendants on the same basis is completely unfounded. The issue is so obviously barred that we need not even go through the five elements necessary for successful application of issue preclusion. *See Donna–Lee*, 836 F.2d at 34. Plaintiff's attorney needs to return for basic lessons in civil procedure: the proper mechanism for contesting an adverse decision is to appeal, not to ignore the judgment of the court. We find that plaintiff's section 1983 claims against defendants Goyco–Amador and Meléndez–Vega are barred.

### 2. *Santiago–Martinez*

■ The defendant Santiago–Martínez was not named as a party in the earlier lawsuit. Plaintiff has now joined him in both her claim under Title VII and her claim under section 1983. While plaintiff is not barred by collateral estoppel from raising a section 1983 claim against him, plaintiff should have realized the frivolous nature of such a claim given the decision of this court. Santiago–Martínez is in a similar position to defendants Goyco–Amador and Meléndez–Vega, *i.e.*, he is an agent of plaintiff's employer with a supervisory role. The facts involving him in the suit are part of the fact complex which plaintiff presented to support her Title VII suit. It is telling that the facts which she asserts to show Santiago–Martínez' involvement are practically non-existent—because the only facts which would show his involvement are those which also implicate Goyco–Amador and Meléndez–Vega.

"[W]here an employee does not establish an independent basis[,] and the ... § 1983

claims are inherently bound up with the Title VII claim, Title VII constitutes the exclusive remedy." *Tafoya v. Adams*, 612 F.Supp. 1097, 1103 (D.Colo.1985); *see also Torres v. Wisconsin Dept. of Health & Social Services*, 592 F.Supp. 922 (E.D.Wis.1984); *Ratliff v. City of Milwaukee*, 608 F.Supp. 1109 (E.D.Wis.1985); *Keller v. Prince George's County Department of Social Services*, 616 F.Supp. 540, 544 (D.Md.1985).[3] "[T]he plaintiff['s] so-called constitutional allegations are so tied up with their cause of action under Title VII that they are, in the Court's view, nearly unidentifiable as discrete claims." *Torres*, 592 F.Supp. at 930. Plaintiff has failed to allege an independent basis for suit against Santiago–Martínez under section 1983.

Therefore, because section 1983 may not be used to bypass the administrative measures of Title VII, which now grants plaintiff comprehensive remedies, any suit against Santiago–Martínez under section 1983 is barred by Title VII. *Marrero–Rivera I*, 800 F.Supp. at 1032. The only reason Santiago–Martínez is not joined in plaintiff's Title VII suit is because plaintiff failed to properly file a charge against him. To allow suit under section 1983 would be allowing plaintiff to bypass the administrative measures of Title VII.

### 3. *Acosta–Ronda*

■ Acosta–Ronda, however, is in a slightly different position. Our primary concern in finding the amended version of Title VII precludes suit under section 1983 on the same facts was to protect the administrative apparatus of Title VII. For that reason, the failure to properly follow administrative pro-

---

3. Most courts have adopted an independent rights approach to the issue of parallel Title VII and section 1983 suits, as opposed to the complete preemption approach which this court has adopted in light of the remedial additions to Title VII. *See* 42 U.S.C. § 1981a. Under this approach, they have nonetheless reached a similar result in cases where the facts and substantive cause of action are the same under both statutes. Those courts have found that "[i]t would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983."

*Day v. Wayne County Board of Auditors*, 749 F.2d 1199, 1204 (6th Cir.1984); *Tafoya v. Adams*, 816 F.2d 555 (10th Cir.1987); *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir.1986); *Irby v. Sullivan*, 737 F.2d 1418 (5th Cir.1984). These courts seem to find that where the grounds for cases under both Title VII and section 1983 are the same, and the elements of the substantive cause of action are the same, Title VII precludes suit under section 1983. We find that the amendment of Title VII to include a comprehensive remedial scheme implies the preclusion of section 1983 and see this as a logical extension of both the independent rights line of reasoning and the complete preemption line of reasoning.

cedures cannot open the door to a section 1983 suit. However, an independent basis for a constitutional violation which is distinct from the Title VII violation should be redressable. Here, plaintiff alleges that defendant Acosta–Ronda conducted the investigation of her sexual harassment claims in an unconstitutional manner. While the investigation was prompted by the same fact complex which comprises plaintiff's Title VII suit, it was a separate event. The manner in which it was conducted, by an individual who was not plaintiff's employer,[4] should be reviewable for constitutional violations. It is an event distinct from the alleged discriminatory violation. Therefore, it provides an independent basis for a section 1983 suit.

Plaintiff, however, has failed to state a cause of action under section 1983. Acosta–Ronda is alleged to have failed to interview witnesses who corroborated plaintiff's version of the facts. She is alleged to have manipulated a number of witnesses in to false statements, and to have distorted the testimony of others. We cannot find a way to fit those facts into the multitude of constitutional violations plaintiff has included as part of her section 1983 claim: Violations of the first, fourth, fifth, ninth, thirteenth, and fourteenth amendments.

### (a) *The Thirteenth Amendment*

■ The facts which plaintiff alleges do not give rise to a cause of action under the thirteenth amendment. In the employment discrimination context, the thirteenth amendment has only been implicated, and then only rarely, where the discrimination is based on race. Plaintiff alleges nothing of this nature in her complaint. We, therefore, dismiss the part of the claim arguing that there has been a violation of the thirteenth amendment as

raising no cause of action given the facts plaintiff alleges.

### (b) *Right to Privacy*

■ The only reason we can see for including violations of the fourth, fifth, and ninth amendments in plaintiff's complaint is that the Constitution establishes a right to privacy on a combination of rights created under the first, fourth, fifth, and ninth amendments. *Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); *see also* Laurence H. Tribe, *American Constitutional Law* at 774–77 (1988). While privacy can be implicated in a number of contexts, when a plaintiff alleges sexual harassment her right to privacy is only implicated if she was forced to answer questions which reveal information about private sexual matters. *Eastwood v. Dept. of Corrections,* 846 F.2d 627 (10th Cir.1988). We dismiss this claim because there is no evidence in the record to establish a cause of action. Plaintiff does not allege that she was forced to reveal any information about her private life at any time. Based on the allegations in plaintiff's complaint, which the court must accept as true and construe in favor of the complaining party when considering a motion to dismiss, *International Paper Co. v. Town of Jay,* 928 F.2d 480, 482 (1st Cir. 1991), there is nothing to establish a violation of plaintiff's right to privacy. We, therefore, dismiss plaintiff's fourth, fifth, and ninth amendment claims.

### (c) *First Amendment*

■ As for her first amendment claim, plaintiff would only have a claim under the first amendment if she suffered retaliation for commenting upon matters of public con-

---

4. An "employer" is defined in Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Agents of the employer may also be held individually responsible under Title VII. An agent is defined as a person with direct authority over the terms and conditions of the plaintiff's employment. *Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir.1986); *Zabkowicz v. West Bend Co., Div. of Dart Industries, Inc.,* 789 F.2d 540, 546 (7th Cir.1986); *Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989). A co-worker or other employee who has "no authority to hire or fire and had not been clothed with apparent authority" cannot be an agent of the employer. *EEOC v. F & D Distributing, Inc.,* 728 F.2d 1281 (10th Cir.1984). Acosta–Ronda is not alleged by the plaintiff to have had any authority over plaintiff's employment situation. She was assigned by plaintiff's employer to investigate plaintiff's claim of sexual harassment and was confined to a fact-finding role. Therefore, plaintiff would have no action against her under Title VII.

cern. *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The Supreme Court held that when a public employee speaks as an employee about matters of personal interest rather than as a citizen about matters of public concern the federal court is not the appropriate forum. *Connick v. Meyers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983). Courts have found no first amendment protection for speech regarding private matters. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Alinovi v. Worcester School Committee*, 777 F.2d 776 (1st Cir.1985). In this case, Acosta–Ronda was in no position to retaliate against the plaintiff. Moreover, even if the facts alleged could be considered retaliation for plaintiff's complaints of sexual harassment, these are matters of personal interest. While these may be violations under Title VII, they do not constitute first-amendment violations because they involve purely private speech. Plaintiff was attempting to express her concerns about her own position and treatment. Therefore, the treatment of the plaintiff had no relation to her assertion of her first-amendment rights. Plaintiff has not alleged any facts which would state a cause of action under the first amendment.

### (d) *The Fourteenth Amendment*

 Discrimination of the basis of sex which is not substantially related to important government objectives constitutes a violation of the equal protection clause of the fourteenth amendment. *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979). However, there is no way in which the behavior of Acosta–Ronda can be construed to be sex discrimination. Therefore, we assume that plaintiff wishes to plead a section 1983 cause of action for the violation of her due process rights, the second clause of the fourteenth amendment. The due process clause of the fourteenth amendment is implicated only if plaintiff can show a property or liberty interest in her employment. If the plaintiff holds a property interest under state law, then she cannot be discharged without the procedural safeguards which the federal constitution requires. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–47, 105 S.Ct. 1487, 1491–96, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). If plaintiff's employment would legally be defined as a career position under Puerto Rico law, then she has a property interest in her employment. *See De Feliciano v. de Jesús*, 873 F.2d 447, 452 (1st Cir.1989), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989); *Rosario–Torres v. Hernández–Colón*, 889 F.2d 314 (1st Cir.1989).

Based upon plaintiff's allegations, we assume that plaintiff's position as a secretary for the Department of Justice was a career position and that she was legally hired for that position, in which case she has a right to due process prior to termination. To the extent that plaintiff has alleged that Acosta–Ronda failed to accord her due process protections in the course of Acosta–Ronda's investigation, plaintiff has a cause of action against Acosta–Ronda. However, plaintiff must show that Acosta–Ronda's behavior resulted in her loss of her position. Since plaintiff's transfer was implemented long before the investigation, the investigation had nothing to do with plaintiff's job situation. We can find no causal nexus between the investigation and plaintiff's job situation. Therefore, we must find that plaintiff has no due process claim based upon her property interest in her position.

In order to have a liberty interest, plaintiff must have been discharged in such a way that it publicized defamatory information about her. *Downum v. Wichita*, 675 F.Supp. 1566 (D.Kan.1986). From her allegations it appears that she was not discharged so much as forced to resign. To the extent that her transfer eventually resulted in her resignation and to the extent that this was the result of public complaints about plaintiff's competence and behavior, plaintiff would have a claim for violation of a liberty interest. However, again we have difficulty seeing the nexus between plaintiff's discharge and the investigation conducted by Acosta–Ronda. Acosta–Ronda was not responsible for discharging plaintiff. So, again, plaintiff has no cause of action. Acosta–Ronda's role in the

events which transpired does not lend itself to an action under section 1983.

## C. *Rule 11 Sanctions*

 Finally, we reach the issue of sanctions under Fed.R.Civ.P. 11. Rule 11 requires that:

> [t]o the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The jurisprudence surrounding Rule 11 has evolved considerably in the last few years. It is the "reasonable inquiry" language which has formed the core of the present approach to Rule 11 sanction, since the "improper purpose" language requires a showing of bad faith, the requirement which rendered the original Rule 11 toothless. The First Circuit joins others in reading Rule 11 as requiring sanctions "where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Lancellotti v. Fay*, 909 F.2d 15 (1st Cir.1990) (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985)).

In addressing the two inquiries required by Rule 11, we will begin with the more difficult to prove, the "improper purpose" inquiry. This requires that the moving party show that the other party introduced the motion "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Defendants do not try to prove this kind of bad faith on the part of the plaintiff. Instead, they base their argument on the lack of reasonable inquiry. They argue that plaintiff's attorney knew that the court had already ruled on the issues he raised. Therefore, he should have known that these claims were barred by collateral estoppel. We agree with the defendants. Plaintiff's attorney should have known, at least with regard to those defendants named

in the previous suit. The First Circuit has held that when the court finds a Rule 11 violation, it must award some form of sanction. *Figueroa–Ruiz v. Alegría*, 905 F.2d 545, 548 (1st Cir.1990). However, it retains the flexibility to tailor the sanctions to the particular facts of the situation. *Id.*

Since not all of plaintiff's complaint was frivolous, and because this case involves several novel and controversial issues, we find that the sanctions at this time should be in the form of a slap on the wrist. Plaintiff's attorney could not in good faith have brought claims under section 1983 against the Department of Justice, Goyco–Amador, and Meléndez–Vega. We expect counsel for plaintiff to take a hard look at his remaining mission in this case. Adjustments should be made to reflect that counsel is capable of steering this case into a course that will bring the same to a just, speedy, and inexpensive determination. Fed.R.Civ.P. 1. If not, the court, *sua sponte* or upon motion, may decide to impose Fed.R.Civ.P. 11 sanctions at the conclusion of the proceedings.

## III.

### *Conclusion*

Plaintiff's claims under section 1983 against the Department of Justice, Goyco–Amador, and Meléndez–Vega are **DISMISSED** as barred by collateral estoppel. Plaintiff's claim against Santiago–Martínez under section 1983 is **DISMISSED** as precluded by Title VII. Plaintiff's claim against Acosta–Ronda under section 1983 is **DISMISSED** for failure to state a cause of action. Plaintiff's claims against Santiago–Martínez and Acosta–Ronda under Title VII are **DISMISSED** as barred for failure to timely file an administrative claim. Defendant's motion for Rule 11 sanctions is **GRANTED**. The actions that remain are suits under Title VII against the Department of Justice, Goyco–Amador, and Meléndez–Vega.

This order disposes of *Docket Document Nos. 12 and 13.*

**IT IS SO ORDERED.**