Anna LETOURNEAU, Plaintiff

v.

CASA MIA, INC., Defendant

Civ. No. 92–196–P–H.

United States District Court,
D. Maine.

Oct. 22, 1992.

Robert S. Hark, Isaacson & Raymond, Lewiston, Me., for plaintiff.

Coleman Coyne, Murphy & Coyne, Lewiston, Me., James M. Bowie, Thompson & Bowie, Portland, Me., for defendant.

## MEMORANDUM OF DECISION

HORNBY, District Judge.

The issue in this case is whether a 1991 statute adding compensatory and punitive damages to the remedies available for sex discrimination applies to conduct that took place before the effective date of the Act. I conclude that it does not.

On May 22, 1992, Anna Letourneau began this lawsuit against Casa Mia, Inc., ("Casa Mia") for unlawfully discriminating against her in 1990 because of her pregnancy. *See* 42 U.S.C. § 2000e–2. Letourneau requested compensatory and punitive damages under a portion of 42 U.S.C. § 1981a that was enacted on November 21, 1991. Before the enactment, only reinstatement, back pay and injunctive relief were available. *See* 42 U.S.C. § 2000e–5(g) (1972). Casa Mia has moved to dismiss Letourneau's claim, arguing that the new remedies are available only for discrimination occurring after the new provision's enactment. Casa Mia's motion to dismiss the compensatory and punitive damages claim is GRANTED.

The compensatory and punitive damages remedy was added by the Civil Rights Act of 1991. Nothing in that statute addresses whether the new remedy is to be made available in all future judgments even if the illegal discrimination occurred before the date of enactment (retroactive) or only in those cases where the illegal conduct occurred after the date of enactment (prospective). The effective date language states only: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." 42 U.S.C. § 1981 note.[1]

---

1. According to one senator, "this language will    leave it to the courts to determine the extent to

Two particular provisions of the Act are expressly made prospective only.[2] But these provisions shed no light on whether other sections of the Act are to be applied prospectively or retroactively.[3]

The legislative history of the Act reveals that Congress actively debated this very issue but was unable to reach a conclusion. *See, e.g.,* 137 Cong.Rec. S15,325 (daily ed. Oct. 29, 1991) (statement of Sen. Danforth); 137 Cong.Rec. S15,472–15,478 (daily ed. October 30, 1991) (interpretive memorandum of Sen. Dole); 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991) (statement of Sen. Murkowski); 137 Cong.Rec. 16,963 (daily ed. Nov. 5, 1991) (statement of Sen. Kennedy); 137 Cong.Rec. H9548–9549 (daily ed. Nov. 7, 1991) (statement of Rep. Fish).[4] Given the inability of Congress to decide what it wanted, it is necessary to turn to judicial precedent to determine whether the compensatory and punitive damages provisions of § 1981a should be applied retroactively or prospectively.[5]

The United States Supreme Court has announced two differing legal presump-

tions governing whether new legislation is to be applied retroactively or prospectively in the absence of congressional direction. In *Bradley v. Richmond Sch. Bd.,* the Supreme Court favored retroactivity, stating that absent clear statutory direction or legislative intent "a court is to apply the law in effect at the time it renders its decisions," unless such application would result in "manifest injustice." 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1973). *Bradley* looked to three factors to determine whether manifest injustice would result from a retroactive application of a statute: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact of the change in the law upon those rights. *Id.* at 717–21, 94 S.Ct. at 2019–21.

The other and apparently conflicting presumption comes from *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), and *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). According to *Bowen,* "[r]etroactivity is not favored in the

which the bill will apply to cases and claims that are pending on the date of enactment." 137 Cong.Rec. S15,963 (daily ed. Nov. 5, 1991) (statement of Sen. Kennedy).

**2.** 42 U.S.C. § 2000e note (U.S. citizens employed in foreign countries); 42 U.S.C. 1981 note (disparate impact cases where a complaint was filed before March 1, 1975, and an initial decision was rendered after October 30, 1983).

**3.** *But see Davis v. City & County of San Francisco,* 976 F.2d 1536, 1554 (9th Cir.1992) (court stated that two "prospective only" provisions indicated Congress's intent that remainder of statute's provisions are to be applied retroactively).

**4.** Both proponents and opponents of retroactivity tried to create legislative history supporting their views. *Compare* 137 Cong.Rec. S15,485 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy) ("Ordinarily, courts in such cases apply newly enacted procedures and remedies to pending cases") *with* 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (statement and interpretive memorandum of Sen. Danforth) ("Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exem-

plified by *Bowen* and Justice Scalia's concurrence in *Bonjorno*").

**5.** I do not find helpful the EEOC's pronouncement that the statute should be given prospective relief only. *See* EEOC Policy Guidance, N–915.002. [New Developments] 2 Employment Practices (CCH) ¶ 5329, at 6055 (Dec. 27, 1991). The EEOC is not charged with authority to promulgate rules or regulations and therefore its interpretation is not entitled to particular significance. *See General Elec. Co. v. Gilbert,* 429 U.S. 125, 141, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976). The level of deference I should accord its pronouncement depends "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), *quoted in E.E.O.C. v. Arabian Am. Oil Co.,* —— U.S. ——, ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (U.S.1991). Here, in making its pronouncement of prospectivity, the EEOC has relied solely upon its legal analysis of Supreme Court precedents. It has no special expertise in that role but is simply performing the same function as a court. There is no reason, therefore, to give deference to the EEOC analysis, although in this particular case I reach the same conclusion it does.

law," and statutes and administrative rules will be construed to have retroactive effect only where the statutory language requires this result. 488 U.S. at 208, 109 S.Ct. at 471. *Bennett* states that "statutes affecting substantive rights and liabilities ... have only prospective effect." 470 U.S. at 639, 105 S.Ct. at 1560. The Supreme Court has recognized that the *Bowen/Bennett* and *Bradley* rules are apparently contradictory, but has declined to resolve the contradiction. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836–38, 110 S.Ct. 1570, 1577–78, 108 L.Ed.2d 842 (1990).[6]

Recognizing the existence of these two differing presumptions, the First Circuit has stated that for this Circuit the "touchstone for deciding the question of retroactivity is whether retroactive application of a newly announced principle would alter substantive rules of conduct and disappoint private expectations." *C.E.K. Indus. Mechanical Contractors, Inc. v. NLRB*, 921 F.2d 350, 357–58 n. 7 (1st Cir.1990) (citing *Demars v. First Serv. Bank for Sav.*, 907 F.2d 1237, 1239–40 (1st Cir.1990)).

Unfortunately the two-part *C.E.K.* formulation does not resolve the issue in cases like this because each factor points in a different direction. On the one hand, adding compensatory and punitive damages to the relief available for sex discrimination has not altered the substantive rules of conduct. (The standard for evaluating the *legality* of such conduct has not changed; instead, additional relief has simply been made available.) On the other hand, making this additional relief available for past violations would interfere with private expectations. (An employer violating the Act before the 1991 amendment had no expectation or understanding that its conduct could result in compensatory and punitive damages nor did an employee whose rights

were violated have any expectation of recovering such damages.) Thus, under the two-part *C.E.K.* formulation, the first factor calls for retroactive application but the second calls for prospective application.

First Circuit decisions prior to *C.E.K.* are of no additional help. In *Demars*, the First Circuit purported to recognize the two competing Supreme Court presumptions by concluding that the *Bennett* rule (*Bowen* was not mentioned) of prospectivity would apply if *substantive* rights and liabilities were affected;[7] otherwise, *Bradley* would apply. In applying *Bradley*'s rule in *Demars*, however, the First Circuit ignored the three-factor analysis set forth in *Bradley* and focused instead on a balancing rule: whether "the disappointment of private expectations that results from the implementation of a new rule" is outweighed by "public interest in the enforcement of that rule." 907 F.2d at 1240, *quoting New England Power Co. v. United States*, 693 F.2d 239, 245 (1st Cir.1982). Using the *Demars* approach, I find that substantive rights and liabilities have not been affected by the 1991 amendment: as I have already pointed out, the substantive rules of conduct and liability have not altered; only the remedies are different. Therefore, under *Demars* the *Bradley* analysis applies and *Demars*'s balancing test must be used to determine whether manifest injustice exists. The balancing test, however, provides no guidance in a case like this: the disappointment of private expectations is great in the creation of a new and substantial penalty; on the other hand, the public interest is great in insuring that gender discrimination ends. How is a judge to determine in which direction the balance scale has tilted?

The next preceding First Circuit case, *Aledo–Garcia v. Puerto Rico Nat'l Guard Fund, Inc.*, 887 F.2d 354 (1st Cir.1989), also

---

**6.** Justice Scalia addressed the two lines of cases springing from *Bradley* and *Bowen/Bennett* and stated in his concurrence that "[i]n the rules of construction that they announce, if not in the results they produce, these two lines of cases are not merely, as the Court confesses, in 'apparent tension,' ... they are in irreconcilable contradiction, and have spawned Courts of Appeals opinions to match." *Bonjorno*, 494 U.S. at 841, 110 S.Ct. at 1578 (Scalia, J., concurring).

**7.** *Demars* failed to recognize that in its earlier decision in *Aledo–Garcia* (discussed below) the court had applied the *Bradley* presumption even where substantive rights and liabilities were affected.

provides no help. That case did not cite the *Bennett/Bowen* line of cases, but simply applied the *Bradley* presumption. The court found no manifest injustice even in altering substantive rules of conduct retroactively because of the court's own evaluation that a public policy against age discrimination was particularly important. It seems ill-advised to rely on *Aledo–Garcia* since the court there apparently was not even aware of *Bennett* and *Bowen* and because its manifest injustice analysis is inconsistent with later First Circuit decisions even though it has not been explicitly overruled.

■■■ Since the First Circuit precedents provide no guidance, it is necessary to return to the Supreme Court precedents on prospectivity/retroactivity, conflicting though they are. The most recent decision, *Kaiser Aluminum,* explicitly declined to resolve the contradiction and therefore is of no help. *Bowen* and *Bennett* specifically favor prospective effect only, unless there is a clear legislative intent to the contrary. There is no clear legislative intent to the contrary here. Therefore, if *Bowen* and *Bennett* apply, the compensatory and punitive damages remedy is not available. I cannot rely on these two decisions, however, because the Supreme Court has refused to overrule *Bradley.* *Bradley* calls for retroactive application of a statute unless it creates manifest injustice. Manifest injustice, in turn, is measured by (1) who the parties are, (2) what rights are involved, and (3) the impact of the change upon those rights. The parties here are both private. Under *Bradley,* that is a factor favoring prospectivity (whereas if a public agency is one of the parties, retroactivity is favored).[8] The second factor, "the nature of the rights affected by the change," 416 U.S. at 720, 94 S.Ct. at 2020, also calls for prospective effect. In *Bradley,* the Court assessed this factor by considering whether the change would "infringe upon or deprive a person of a right that had matured or become unconditional." *Id.* It concluded that a publicly-elected school board did not have a matured or unconditional right in funds allocated to it by taxpayers and held in trust for the public, subject to conditions or instructions that the public wished to make through its duly-elected representatives. *Id.* Here, in contrast, a private defendant owns its funds outright. If it violated the law in 1990, the plaintiff's right and the defendant's liability matured and became unconditional at that time (although subject to the condition subsequent as to whether the plaintiff would bring a lawsuit). To alter the measure of the relief later can therefore be said to infringe upon a matured or unconditional right under *Bradley*'s analysis.[9] Finally, the third factor—"the nature of the impact of the change in law upon existing rights," 416 U.S. at 720, 94 S.Ct. at 2020–21—also calls for prospectivity rather than retroactivity. In *Bradley,* the Court minimized the significance of the change because the defendant there was subject to the "new" remedy (attorney fees) in some circumstances even under pre-existing law. The Court concluded that the fact that the statute in question made that remedy generally available did not have a material impact such that, if known earlier, it would have caused the defendant to alter its conduct. *Id.* at 721, 94 S.Ct. at 2021. In this case, by contrast, it was well established that compensatory and punitive damages were unavailable before the amendment. *See Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 159 (1st Cir.1990); *DeGrace v. Rumsfeld,* 614 F.2d 796, 808 (1st Cir.1980); *Curran v. Portland Superintending Sch. Comm.,* 435 F.Supp. 1063, 1078 (D.Me.1977). It is quite conceivable that awareness of the compensatory and

---

8. This principle goes back to Chief Justice Marshall's statement in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801): "[I]n mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties...." 5 U.S. (1 Cranch) at 110.

9. There is, of course, circularity in this factor because the determination of whether a right is matured and unconditional itself depends upon whether a later change in the law is given retroactive or only prospective effect.

punitive damage remedy, a dramatic change in financial exposure, would have caused the defendant to alter its conduct. Thus, I conclude that under the three-factor *Bradley* analysis, manifest injustice would result from retroactive application of the new remedy. *Bradley, Bowen* and *Bennett,* therefore, all call for prospective application of the amendment.

Considering all the ink that has been spilled and all the judicial resources and attorney fees that have been consumed over this issue in district and circuit court cases around the country, the actions of Congress in intentionally ducking the retroactivity issue in the 1991 legislation and of the United States Supreme Court in deliberately failing to resolve its conflicting precedents on retroactivity principles appear to be textbook examples of unnecessary costs and delay in civil litigation of the sort Congress has decried and for which it has turned to district courts for solutions. *See* Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–82; 28 U.S.C. § 471 note (Congressional Findings).[10]

I conclude that under *Bradley, Bowen* and *Bennett,* compensatory and punitive damages are not available to the plaintiff in this case. Accordingly, the defendant's motion to dismiss the compensatory and punitive damages claim is GRANTED. Attorney fees are DENIED. The parties shall confer and the plaintiff shall notify the court within fourteen (14) days whether she wishes to pursue the remainder of her claim in this court or rest solely upon her state court action.

SO ORDERED.

---

10. First Circuit precedents likewise have done nothing to assist trial courts in this Circuit in dealing with the issue.