Steffan T. DUPLESSIS, Plaintiff,

v.

**TRAINING & DEVELOPMENT CORPORATION, et al.,
Defendants.**

Civ. No. 92–0096–B.

United States District Court,
D. Maine.

May 17, 1993.

See also 821 F.Supp. 43.

Malcolm Lyons, Margaret LePage, Portland, ME, Lewellyn R. Michaud, Bangor, ME, for plaintiff.

Bernard J. Kubetz, Thomas C. Johnston, George C. Schelling, Bangor, ME, for defendants.

ORDER AND MEMORANDUM
OF OPINION

BRODY, District Judge.

This matter is before the Court on Defendants' Motion *In Limine* Against Retroactive Application of Civil Rights Act amendments 42 U.S.C. §§ 1981a, 1988(b) and (c), and 2000e–5(g) and (k). This Court has previously ruled that it would not retroactively apply 42 U.S.C. § 1981(b). (Order and Mem. of Op., April 2, 1993.) Section 1981 prohibits discrimination in making and enforcing contracts. 42 U.S.C. § 1981. Before § 1981(b) was added, the Supreme Court in *Patterson v. McLean Credit Union,* interpreted § 1981 as applying only to conduct "at the initial formation of the contract and conduct which impairs the right to enforce contractual obligations through legal process." 491 U.S. 164, 179, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). Section 1981(b) allows post-contract formation conduct to fall within the parameters of the statute, effectively overruling *Patterson.* Because this Court concluded § 1981(b) affected the substantive rights of the parties, the Court refused to retroactively apply that amendment. (Order and Mem. of Op., April 2, 1993.)

Defendants now bring a separate motion *in limine* with respect to the above-mentioned provisions of the Civil Rights Act. The amended provisions added the remedies

of compensatory and punitive damages to Title VII claims and added recovery of attorney and expert witness fees under both § 1981 actions and suits brought pursuant to Title VII. *See* 42 U.S.C. § 1981a (allowing for compensatory and punitive damages under Title VII); 42 U.S.C. § 1988(b) and (c) (allowing for attorney and expert fees under § 1981); and 42 U.S.C. § 2000e–5(g) and (k) (allowing for attorney and expert fees under Title VII). Because the Court is satisfied that no manifest injustice would result from retroactively applying these provisions, Defendants' Motion is *DENIED.*

### I. *Factual Background*

Plaintiff Steffan Duplessis brings this action alleging several federal civil rights violations by his past employer, Training & Development Corporation ("TDC"), and various individual employees of TDC. Specifically, Plaintiff alleges Defendants participated in and failed to prevent harassment of Plaintiff on the basis of his national ancestry and intentionally refused to select Plaintiff to continue his employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Also relevant to this motion is a similar claim under 42 U.S.C. § 1981.

The remedies and costs recoverable under the civil rights statutes at issue were amended by the Civil Rights Act of 1991. Defendants seek a determination of whether these amendments will be retroactively applied.

### II. *Discussion*

The Civil Rights Act of 1991 ("CRA") became effective on November 21, 1991. Plaintiff filed his Complaint on May 19, 1992. Although the suit was filed after the passage of the CRA, the conduct alleged in this case occurred before the Act was passed. The First Circuit applies the term "retroactive" to situations where "the problem is whether the act fully effective as of the time the case is heard and decided should govern conduct occurring before the stated effective date." *Aledo–Garcia v. Puerto Rico Nat. Guard Fund, Inc.*, 887 F.2d 354, 355 (1st Cir.1989). Because this case presents just such a situa-

tion, the Court discusses its determination in terms of retroactivity.

■ As discussed in this Court's previous Order regarding retroactivity, the Supreme Court has announced two differing legal presumptions to determine whether new legislation should be applied retroactively or prospectively. *See* Order and Mem. of Op., April 2, 1993. In *Bradley v. Richmond Sch. Bd.*, the Supreme Court favored retroactivity of legislation. 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). There the Court announced "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."[1] *Id.* at 711, 94 S.Ct. at 2016. The Court devised a three-part test to determine whether manifest injustice would result from any specific retroactive application. The three-part test involves examining: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in the law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

In contrast, in *Bennett v. New Jersey*, the Supreme Court stated that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985). The Court noted that this limitation was in accord with *Bradley. Id.* In furtherance of the *Bennett* principle, the Court stated in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), that: "Retroactivity is not favored in the law." *Id.* at 208, 109 S.Ct. at 471.

In *Demars v. First Service Bank for Savings*, the First Circuit concluded that the *Bennett* rule of prospectivity would apply if substantive rules of conduct were affected; otherwise, *Bradley* would apply. 907 F.2d 1237, 1240 (1st Cir.1990). Despite expressing that *Bradley* should apply in cases where substantive rights were not affected, the *De-*

---

1. As we have previously indicated, neither the language of the CRA nor its legislative history explicitly indicate whether the CRA should apply retroactively or prospectively. *See* Order and

Mem. of Op. at 3–4, April 2, 1993. For this reason, *Bradley's* proscription against retroactive application where there is explicit legislative direction to the contrary, does not apply.

*mars'* court appears to have focused on balancing "the disappointment of private expectations that results from the implementation of a new rule" with the "public interest in the enforcement of that rule." *Id.* Nowhere in *Demars* are *Bradley*'s three-prongs applied.

In *Aledo–Garcia v. Puerto Rico Nat'l Guard Fund, Inc.*, 887 F.2d 354, 355–56 (1st Cir.1989), the First Circuit examined whether an amendment expanding the upper age limit of the Age Discrimination in Employment Act's [2] coverage should be applied retroactively. As in *Demars*, the First Circuit found the *Bradley* presumption controlling on the issue of retroactivity.[3] *Id.* Unlike *Demars*, in *Aledo–Garcia* the First Circuit laid out *Bradley*'s three-part test, applying the facts to each prong. The *Aledo–Garcia* court indicated that *Demars'* balancing test should be used to examine *Bradley*'s third-prong, the impact of the change in the law upon the rights and expectations of the parties. 887 F.2d at 357.

An examination of district court cases applying *Bradley* in this Circuit indicates that there is no consensus regarding the way each prong should be applied or the weight any one prong should be given. While in every relevant case, the courts in this Circuit have utilized *Bradley* in some manner, a careful examination shows that each court engages in its own balancing test, sometimes in the name of *Bradley*'s third prong, to determine when a particular retroactive application would result in manifest injustice.

 In this case, Defendants seek to avoid having the CRA amendments which pertain to damages and fees apply to them if they are ultimately found to have violated Title VII and/or § 1981. Compensatory and punitive damages and fee provisions do not change the standard for evaluating the legality of conduct; therefore, such provisions can not be said to affect substantive rules of conduct. They serve only to make additional relief available. Because damage provisions do not alter substantive rules of conduct, this Court applies the *Bradley* presumption as militated by *Demars*.

Rather than attempting to reconcile the cases in this Circuit, this Court will examine *Bradley*'s three prongs and analyze how the courts in this Circuit have treated the same prongs in divergent ways. Acknowledging that *Bradley*'s inquiry was devised to help determine when any particular retroactive application would result in manifest injustice, this Court is persuaded that a bright-line test would better serve the purpose and clarify the issue.

1. The Nature of the Parties

Under *Bradley*, this Court must first examine the nature and identity of the parties. *See Bradley*, 416 U.S. at 717–19, 94 S.Ct. at 2019–20. The First Circuit has found that "if the party against whom the statute is to be applied is a public party, then the 'struggle' against the so-called retroactive application is not as hard."[4] *Aledo–Garcia*, 887 F.2d at 356.

 Plaintiff argues that TDC must be considered a public party for purposes of the applicability of the CRA because TDC is a federal contractor that runs the Penobscot Job Corps Center based upon a contract with the Department of Labor. At oral argument TDC contested Plaintiff's characterization, arguing that because it is not a government agency and because it could theoretically supplement its resources with private funds, it should not be considered a public party for purposes of determining the applicability of the civil rights amendments. Although, the Court is inclined to agree with Plaintiff's characterization, a determination as to the nature of TDC is not necessary because in addition to TDC, several individual employ-

2. 29 U.S.C. §§ 621–634.

3. In order to apply *Bradley* and be consistent with *Demars*, it appears that the *Aledo* Court implicitly found that expanding the category of persons covered under the Age Discrimination in Employment Act does not affect substantive rights.

4. This principle goes back to Chief Justice Marshall's statement in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801): "[I]n mere private cases between individuals, a court will and ought to struggle hard against a construction which will by a retroactive operation, affect the rights of parties...." 5 U.S. (1 Cranch) at 110.

ees of TDC are named defendants. Because at least some of the defendants are private, the Court characterizes the parties as private for the purpose of the analysis of this prong of *Bradley.*

Some cases end *Bradley*'s inquiry into the nature of the parties after classifying each party as either public or private. *See, e.g., Letourneau v. Casa Mia, Inc.,* 804 F.Supp. 389, 392 (D.Me.1992). As noted above, if the parties are deemed private, these cases favor prospectivity. If the parties are found to be private, other cases dictate a further examination of whether the private dispute seeks to vindicate matters of great national concern.[5] *See, e.g., Petitti v. New England Telephone and Telegraph Co.,* No. 89–3951, 1992 WL 359643, at *5–6 (D.Mass. Nov. 16, 1992).

*Bradley* discussed whether it is appropriate to view parties as engaged in a private lawsuit when they seek to vindicate rights of great national concern. *Bradley* involved the right to a nondiscriminatory education, and the parties were a public school board and a class of children. Because the benefits of such litigation would flow to the community at large, the *Bradley* Court noted that the suit was different from "mere private cases between individuals." *Bradley* 416 U.S. at 718, 94 S.Ct. at 2019.

In this case, Defendants conceded at oral argument that the vindication of civil rights is a matter of great national concern. However, because the amendments in question add relief which is personal to the Plaintiff, the Court is satisfied that, unlike *Bradley,* this case is not different from private cases between individuals. Because this Court favors a narrow application of *Bradley*'s first prong and because at least some of the Defendants in this action are private, the Court is satisfied that the nature of the parties favors prospectivity in this instance.

2. The Nature of the Parties' Rights

In accordance with *Bradley,* this Court must next examine the nature of the parties'

rights. In *Marrero–Rivera v. Dept. of Justice,* 800 F.Supp. 1024 (D.P.R.1992), the District Court for the District of Puerto Rico summarily classified the rights affected by the damage and fee amendments to Title VII as substantial. *Id.* at 1031. After classifying the rights involved as substantial, the *Marrero* court went on to examine *Bradley*'s third prong, engaging in no further analysis of the nature of the parties' rights.

In contrast, a case from the District Court in Massachusetts held that the CRA provisions allowing for punitive damages are remedial and do not effect substantive changes in vested rights. *Petitti v. New England Telephone and Telegraph Co.,* No. 89–3951, 1992 WL 359643 (D.Mass. Nov. 16, 1992). The Massachusett's court stated that defendants have no vested right in previous remedial schemes, and noted that defendants will still be able to introduce all of their evidence and present their cases thoroughly. *Id.* at *6.

Still another court in this Circuit laid out the rights at issue and examined whether such rights had become "unconditional." *Letourneau,* 804 F.Supp. at 392. In holding that amendments to damage provisions infringe on unconditional rights, the *Letourneau* court noted that its reasoning was circular "because the determination of whether a right is matured and unconditional itself depends upon whether a later change in the law is given retroactive or only prospective effect." *Id.* at 392 n. 9.

In *Aledo–Garcia,* the First Circuit set forth the rights at issue and summarily stated that an examination of the nature of these rights did not demonstrate that retroactive application would result in manifest injustice to the defendants. *Aledo–Garcia,* 887 F.2d at 357. As previously indicated, *Aledo–Garcia* involved the right of an employer to fire an employee solely because of his age, and the right of an employee to continued employment in the absence of any non-discrimi-

---

5. This inquiry stems from the rest of Chief Justice Marshall's statement in *Schooner Peggy,* which says, "[I]n *great national concerns,* where individual rights, acquired by war, are sacrificed for national purposes, . . . . the court must decide

according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside." 5 U.S. (1 Cranch) at 110 (emphasis added).

natory factors that might legitimately support a decision to terminate his services. *Id.*

At issue in this case is an employer's right to violate certain statutes prohibiting discrimination while only being subject to certain damage and fee amounts, and an employee's right to obtain enhanced damage and fee amounts if his employer violated a statutorily mandated standard of conduct. Because this Court does not believe it would be unfair to subject defendants to higher damages when their conduct violates a standard which has not been altered, as in *Aledo–Garcia*, we do not believe the rights involved demonstrate that retroactive application would result in manifest injustice. Like *Letourneau*, we acknowledge that any determination regarding retroactivity which is based on an examination of the nature of the rights at issue is necessarily circular. However, unlike *Letourneau*, this Court believes that *Aledo–Garcia* suggests that the courts should not countenance a finding that defendants have an "unconditional" right to pay only those damages awardable at the time their conduct violates a federal law. Accordingly, an examination of the rights affected favors retrospective application.

### 3. The Nature of the Impact of the Change in the Law upon the Rights of the Parties

Finally, *Bradley* dictates that courts scrutinize the impact of the change in the law upon the rights and obligations of the parties. *Aledo–Garcia* states that this inquiry "stems from the concern regarding the application of new and unanticipated obligations upon a party." *Aledo–Garcia* 887 F.2d at 357. In *Aledo–Garcia*, the First Circuit examined the balancing test it laid out in *Demars* to determine whether retroactivity would result in manifest injustice under this

prong. *Id.* Accordingly, we apply this prong by balancing the disappointment of private expectations resulting from the implementation of the new rules against the public interest in the enforcement of those rules. *Id.* (citing *New England Power Co. v. U.S.*, 693 F.2d 239, 245 (1st Cir.1982)).

In this case we are asked to balance the following rights: 1) Defendants' right to discriminate and harass Plaintiff based on his national origin while only being subject to certain damage and fee amounts; and 2) Plaintiff's right to obtain the damages and fees awardable at the time he brought his action provided, of course, that he proves that Defendants violated statutorily mandated standards of conduct. Given that the law has never countenanced that an employer may weigh the legal consequences of his discrimination and choose to continue his unlawful conduct, the Court is persuaded that the balance swings in favor of Steffan Duplessis on this issue.[6] *See Robinson v. Davis Memorial Goodwill Indus.*, 790 F.Supp. 325, 332 (D.D.C.1992), *quoted in, Petitti*, No. 89–3951, 1992 WL 359643 at *8 (D.Mass. Nov. 16, 1992).

Unlike this Court, the *Letourneau* court was not convinced based on the facts of that case that the balance swung in favor of an employee who was seeking compensatory and punitive damages under the CRA amendments to Title VII. 804 F.Supp. at 392–93. Rather, *Letourneau* reasoned that because it is quite conceivable that awareness of the compensatory and punitive damage remedy would have caused the defendant to alter its conduct, the impact of the change in the law upon existing rights calls for prospectivity. *Id.* Like *Petitti*, this Court finds this "cost-benefit" approach to measuring the impact of the change in law upon the parties unlikely to be followed by the First Circuit in light of the expansive approach to retroactivi-

---

**6.** The Court also questions whether it can even be suggested that the amendments in question would impose new and unanticipated obligations on Defendants in this instance. Unlike *Letourneau*, this action was brought under both § 1981 and Title VII, and the damage remedies which are now available under Title VII were previously available under § 1981. Because the same remedies were available under § 1981, Defendants could have anticipated that if their conduct involved harassment and discrimination they might be subject to the imposition of compensatory and punitive damages. However, because the matters of proof are not identical under § 1981 and Title VII, we do not rule that the new remedies could have been anticipated as a matter of law. *Compare Marrero–Rivera v. Dept. of Justice*, 800 F.Supp. at 1031 (Where the same remedies which will be available under Title VII were previously available to the plaintiff under section 1983, retroactive Application of the Civil Rights Act of 1991 is appropriate.)

ty taken in *Aledo–Garcia*. *Petitti*, No. 89–3951, 1992 WL 359643 at *6. Thus, notwithstanding the finding of the *Letourneau* court, this Court is satisfied that the application of *Bradley*'s third prong shows that no manifest injustice would result from retroactively applying the damage or fee provisions of the CRA in this case.

### III. *Conclusion*

After applying the *Bradley* test, this Court is satisfied that no manifest injustice would result from a retroactive application of the provisions of the CRA at issue here. Given the absence of manifest injustice, statutory direction and legislative history, the Court finds the CRA amendments pertaining to compensatory and punitive damages, attorney's fees and expert witness fees retroactive. Accordingly, Defendants' Motion *In Limine* Regarding Retroactive Application of the Civil Rights Act of 1991 is DENIED.

SO ORDERED.